**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LOGAN B. LAKE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1106-CR-256 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diana Ross Boswell, Judge
Cause No. 45G03-1003-MR-2

**February 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Logan Lake appeals his conviction for murder.  We affirm.

**Issue**

Lake raises one issue, which we restate as whether the evidence is sufficient to sustain his conviction.

**Facts**

On the evening of January 27, 2010, Lake and Dina Ivanovskaia met with Thomas Haynes in Schaumburg, Illinois.  Haynes was upset because he had purchased what he thought was Ecstasy from Lake's brother but, instead, he received rock salt.  Haynes wanted Lake to help resolve the situation with Lake's brother.  During the meeting, Haynes showed Lake and Ivanovskaia a handgun in his vehicle's glove box.  After a few minutes, Ivanovskaia went home, leaving Lake and Haynes together in Haynes's vehicle.

On January 28, 2010, at approximately 4:00 a.m., Haynes's upstairs neighbor, Omar Herrera, heard a loud bang and "stuff moving around" in Haynes's apartment in Whiting, Indiana.  Tr. p. 172.  At approximately 4:30 a.m., Ivanovskaia received a telephone call from Lake.  Lake asked Ivanovskaia to calm Haynes down.  Lake said that he had Haynes's gun in his hand, that Haynes wanted to take it from him, and that the gun went off.  Lake told Ivanovskaia that the bullet missed Haynes and hit the wall.  Lake said that Haynes was angry and asked Haynes to talk to Ivanovskaia.  Ivanovskaia heard Lake talking to Haynes but never heard Haynes respond.  Lake sounded like he had been drinking and seemed scared and panicked.

2

At approximately 11:00 a.m. on January 28th, David Davids was working as a bus driver and was getting gasoline at a gas station near Haynes's apartment. Lake approached Davids and asked for a ride to the South Shore train station. Davids responded that he could give Lake a ride, and Lake went behind the gas station and retrieved a large, black garbage bag. Davids saw a Playstation 3 gaming system in the bag and was concerned that it was stolen. Lake kept reassuring Davids that it was not stolen. After dropping off Lake at the train station, Davids stopped at the East Chicago police station and reported the incident. Officer Benjamin Lopez of the East Chicago Police Department responded to the train station and located Lake. Lake was carrying a large garbage bag that contained multiple Blu-Ray movies and two controllers for a Playstation 3. A Playstation 3 was found in a garbage can near Lake. The officers arrested Lake for public intoxication.

Later that evening, Haynes's girlfriend, Aimee Spencer, went to Haynes's apartment because she had been unable to contact him all day. Spencer found Haynes's body on the living room floor and called the police. Initially, police did not realize that Haynes had been shot because there was no blood at the scene. However, an autopsy revealed that Haynes had been shot. The bullet entered his body on the right side of his back, lacerated his right lung, fractured his thoracic spine, lacerated his left lung, and exited his body on the left side of his back. The blood collected inside of his chest cavity, which explained the lack of blood at the scene. Based on the amount of blood inside Haynes's chest cavity, the pathologist thought that Haynes did not die immediately and

possibly lived a few hours. However, Haynes would have been immobilized at least after a few minutes.

In the early morning hours of January 29ᵗʰ, Herrera heard someone trying to get into Haynes's apartment. Herrera went outside onto his balcony and asked "who was down there." Tr. p. 178. Lake responded, "Oh, it's me. I'm looking for [Haynes]." Id. at 179. While his wife called the police, Herrera said that he did not know where Haynes was and that Haynes was not home. Lake said that he was supposed to play video games with Haynes, and Herrera told Lake that Haynes had died. Lake left after seeing that Herrera's wife was on the phone.

After learning that Haynes had been shot, the police returned to the scene on January 29ᵗʰ and found a handgun in the closet and a bullet hole and bullet in the wall in the living room. They also learned that Haynes's Playstation 3 gaming system and numerous Blu-Ray movies were missing. The serial number on the Playstation 3 gaming system found with Lake matched the serial number of Haynes's Playstation 3. Based on receipts in Haynes's apartment, the police were also able to show that Haynes purchased at least some of the Blu-Ray movies in Lake's possession when Lake was arrested.

The State charged Lake with murder, and Lake was later arrested in Oklahoma. At his jury trial, a firearms examiner testified that the bullet that killed Haynes was fired from the handgun found in the closet. She testified that the gun involved in the shooting was a revolver. She performed a trigger pull test to determine the amount of pounds needed to pull the trigger. In the single action mode with the gun's hammer cocked, it took three pounds of pressure to fire the weapon. In the double action mode with the

4

gun's hammer uncocked, it took ten and one-half pounds of pressure to fire the weapon. She also performed an impact test to simulate whether the firearm would discharge if it was dropped or snagged on something. As part of the impact test, the firearms examiner hit the gun with a hammer over 150 times in both the single action mode and the double action mode, and the gun did not discharge. DNA found on the grips of the handgun and the cylinder release demonstrated the presence of a mixture from which Haynes, Lake, and another unknown individual could not be excluded as possible contributors. During closing argument, Lake argued that the State did not prove that he intended to kill Haynes. The jury found Lake guilty as charged, and the trial court sentenced him to sixty years in the Department of Correction. Lake now appeals.

**Analysis**

Lake argues that the evidence is insufficient to sustain his conviction for murder. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The State was required to present evidence that Lake knowingly or intentionally killed Haynes. See Ind. Code § 35-42-1-1. Lake argues that the State failed to prove he acted in a knowing or intentional manner. According to Lake, the evidence demonstrated that he was friends with Haynes, that he told Ivanovskaia the gun discharged when

5

Haynes tried to take it from him, that he did not know Haynes had been shot, and that the apartment did not show signs of a struggle. Lake contends that the evidence demonstrated the gun discharged accidentally.

"A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Our supreme court has held that "[t]he intent to kill may be inferred from the firing a weapon in a manner likely to cause death or serious bodily injury." Garrett v. State, 714 N.E.2d 618, 621 (Ind. 1999).

The State presented evidence that Haynes was involved in a dispute with Lake's brother. Lake met with Haynes to try to resolve the dispute. Several hours later, Lake called Ivanovskaia and told her that Haynes's gun discharged when Haynes tried to take it from Lake. However, Lake said that only the wall was hit by the bullet. The next morning, Lake was arrested near Haynes's apartment, and he had Haynes's Playstation 3 gaming system and Blu-Ray movies. Haynes's body was found later in the day, and he had been shot. The bullet entered his body on the right side of his back, lacerated his right lung, fractured his thoracic spine, lacerated his left lung, and exited his body on the left side of his back. Based on the amount of blood inside Haynes's chest cavity, the pathologist thought that Haynes did not die immediately and possibly lived a few hours. However, Haynes would have been immobilized at least after a few minutes. The handgun was found hidden in the closet in the apartment.

6

It was the jury's prerogative to weigh the evidence to determine Lake's intent given all of the circumstances, including the location and extent of Haynes's injuries, Lake's theft of Haynes's possessions, the dispute between Haynes and Lake's brother, and Lake's admission to Ivanovskaia that he was present and holding the handgun when it discharged. We conclude that the jury was presented with evidence from which it could have found that Lake knowingly or intentionally killed Haynes. Lake's argument to the contrary is merely a request that we weigh the evidence and judge the credibility of the witnesses, which we cannot do.

## Conclusion

The evidence is sufficient to sustain Lake's conviction for murder. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.