**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**ERIN M. RADEFELD**
Certified Legal Intern

**PATRICIA CARESS MCMATH**
Appellate Clinic, Indiana University
 Robert H. McKinney School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| WILLIE GATES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-359 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William J. Nelson, Judge
The Honorable David M. Hooper, Commissioner
Cause No. 49F18-1202-FD-12930

**December 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Willie Gates appeals his conviction and sentence for attempted obstruction of justice as a class D felony. Gates raises two issues, which we revise and restate as:

I.      Whether the evidence is sufficient to sustain his conviction for attempted obstruction of justice; and

II.     Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

FACTS AND PROCEDURAL HISTORY

In the afternoon of February 26, 2012, Indianapolis Metropolitan Police Officer Christopher Shaw observed a vehicle speeding, activated his patrol vehicle's emergency lights, and stopped the vehicle. At some point, Indianapolis Metropolitan Police Officer Daniel Brezik arrived at the scene to assist Officer Shaw and stood along the passenger side of the vehicle. Officer Shaw obtained the driver's license of the driver and the identification of the two passengers in the vehicle, including Gates who was seated in the back seat. Officer Shaw walked back to his patrol vehicle to run a license check on the driver and warrant checks on the passengers.

Officer Brezik observed that Gates watched Officer Shaw's movements and, immediately after Officer Shaw walked back to his patrol vehicle, started to reach into his right pocket. Officer Brezik observed Gates slouch down and then sit back up and, at that point, noticed a green leafy vegetation on Gates's lap which Officer Brezik believed to be marijuana. Officer Brezik also observed "a ripped open empty plastic bag" on the seat next to Gates. Transcript at 20. Officer Brezik believed that Gates was trying to conceal or discard marijuana in the vehicle, and he opened the rear passenger door and ordered

2

Gates to exit the vehicle. Gates did so, and Officer Brezik had him sit on the curb behind the vehicle. As Officer Brezik spoke to Gates, Gates looked down and away, and Officer Brezik noticed that Gates was making "a chewing motion with his jaw." Id. at 21. Officer Brezik asked Gates to open his mouth, Gates complied, and Officer Brezik could see the green leafy substance on his teeth and lip area inside his mouth and could smell marijuana emitting from Gates's mouth. Officer Brezik ordered Gates to spit out the marijuana, and Gates complied and spit it onto the street.

Officer Shaw advised Gates of his Miranda rights, and asked him if he had tried to eat the marijuana, and Gates responded affirmatively and stated that he "didn't want to get into trouble." Id. at 15. The officers collected the marijuana Gates had spit out, which was later determined to consist of 2.68 grams.

On February 28, 2012, the State charged Gates with obstruction of justice as a class D felony and possession of marijuana as a class A misdemeanor. After the State presented its case-in-chief, Gates conceded that the State could move forward on the included offense of attempted obstruction of justice. The court found Gates guilty of attempted obstruction of justice as a class D felony and possession of marijuana as a class A misdemeanor.[1] Gates waived the preparation of a presentence investigation report ("PSI"). The court sentenced Gates to 1,095 days in Marion County Community Corrections on home detention for the class D felony conviction and did not enter a sentence on the class A misdemeanor conviction.

---

[1] Gates does not challenge his conviction for possession of marijuana as a class A misdemeanor.

3

I.

The first issue is whether the evidence is sufficient to sustain Gates's conviction for attempted obstruction of justice as a class D felony. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

At the time of the offense, Ind. Code § 35-44-3-4 provided in part: "A person who . . . alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation . . . commits obstruction of justice, a Class D felony."[2] Gates asserts that the evidence was insufficient to prove beyond a reasonable doubt that he had the intent to prevent the substance from being produced or used as evidence as required by the statute. Gates argues that his situation is not what the legislature intended to prevent when the statute was created, that "when [he] attempted to eat his marijuana, he was not obstructing an investigation," that "[a]t most, [he] was trying to prevent an investigation," and that "[i]f the legislature wanted the statute to cover preventing an investigation, the statute could expressly say so." Appellant's Brief at 6. Gates argues that at no point was there an investigation for drugs while he was putting the marijuana in his mouth and that the

---

[2] Subsequently repealed by Pub. L. No. 126-2012, § 53 (eff. Jul. 1, 2012); Pub. L. No. 126-2012, § 54 (eff. Jul. 1, 2012) (provision recodified at Ind. Code § 35-44.1-2-2).

officer in this case was conducting a traffic stop when he noticed Gates was eating his marijuana.

The State maintains that sufficient evidence exists to sustain Gates's conviction and that Officer Brezik observed Gates holding marijuana and a ripped and empty plastic bag on the seat beside him. The State notes that, at that point, Officer Brezik believed that Gates was trying to conceal marijuana, ordered him out of the vehicle, and ordered him to spit out what was in his mouth. The State contends there is no question regarding Gates's intent because he admitted to the officers that he had tried to eat the marijuana because he did not want police to find it. The State further argues that Officer Shaw had obtained Gates's identification to determine if there were any warrants and thus that Gates "attempted to destroy the marijuana during 'any' investigation." Appellee's Brief at 8. The State also asserts that, "even if this Court were to adopt [Gates's] argument that he must currently be investigated for the crime to which the evidence he is attempting to destroy relates, the facts would still support a conviction," and that Gates "continued trying to consume the marijuana while Officer Brezik was investigating [his] possession of the marijuana." Id.

In his reply brief, Gates argues that he had his back to the police officer when he put the marijuana in his mouth, that his possession of the marijuana did not begin until the marijuana was already in his mouth, and that he complied with the officer's order to spit it out. Gates contends there is no evidence that he refused to spit out the marijuana after being asked to do so and did not prevent the officer from confiscating the substance.

The facts supporting Gates's conviction are that Gates watched Officer Shaw walk back to his patrol vehicle with the identifications of the three occupants of the vehicle in order to check the driver's license and for warrants, and then Gates immediately started to reach into his right pocket. Officer Brezik observed a green leafy vegetation on Gates's lap, which he believed to be marijuana, and "a ripped open empty plastic bag" on the seat next to Gates. Transcript at 20. Officer Brezik believed that Gates was trying to conceal or discard marijuana in the vehicle and he ordered Gates to exit the vehicle. Shortly thereafter, Officer Brezik noticed Gates was making "a chewing motion with his jaw" and ordered Gates to spit out the marijuana. Id. at 21. Gates indicated that he tried to eat the marijuana and that he did not want "to get into trouble." Id. at 15.

We are not persuaded by Gates's argument that an investigation for the purposes of or as contemplated by Ind. Code § 35-44-3-4 was not ongoing or being conducted at the time he attempted to eat and thus conceal the marijuana in his possession. Based upon our review of the record, we conclude that evidence of probative value exists from which the court as the trier of fact could have found Gates guilty beyond a reasonable doubt of attempted obstruction of justice as a class D felony.

II.

The next issue is whether Gates's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to

6

persuade the appellate court that his or her sentence is inappropriate.  Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Gates contends that "[t]he maximum three year (1095 day) sentence of house arrest is an inappropriate sentence [] because he suffers from mental illness and his crime is not severe."  Appellant's Brief at 8.  Gates argues that, although he has a criminal history that merits some weight as an aggravator, the maximum sentence is not appropriate under Appellate Rule 7(B) and that there is nothing particularly egregious about the offense that makes it worse than a typical offense.  He asserts that, as for his character, he suffers from mental illness and that a reduction of his sentence is appropriate under Appellate Rule 7(B).  Gates further asserts that the trial judge acknowledged the physical manifestation of his mental illness, that his "mental issues cause him to react in a way that is outside the realm of normal," and that "[t]his is clear from the fact that Gates urinated on himself and then attempted to eat the marijuana in his possession when his friend got pulled over for a minor traffic violation."  Id. at 10.  Gates argues that his attempt to eat the marijuana did not harm anyone, that the majority of his prior offenses occurred more than ten years ago, and that in light of his mental illness his criminal history does not warrant a maximum sentence.  He posits that the appropriate sentence for him is one and one-half years.

The State argues that Gates's sentence is not inappropriate, that Gates had an extensive criminal history consisting of seventeen prior misdemeanor convictions and four prior felony convictions, and that Gates's actions at the sentencing hearing reinforce that he is incapable of conforming his behavior to the rules of society.  The State

acknowledges that nothing significant about the offense distinguishes the case from a typical obstruction of justice offense, but argues that absolutely no evidence in the record supports Gates's assertion of mental illness and that Gates's disruption during the sentencing hearing was more likely a result of his contempt for courts and law than a manifestation of mental illness. The State further argues that the fact the court asked that Gates be evaluated does not in any way evidence he had a mental illness. The State also notes that the court allowed Gates's sentence to be served on home detention upon his request. In his reply brief, Gates argues that his mental issues and not his contempt for the law are the driving force behind the trouble he is having now and the fact that the court asked that he to be evaluated is evidence that the judge suspected Gates was suffering from a mental condition.[3]

Our review of the nature of the offense reveals that Gates was in possession of marijuana, waited until Officer Shaw walked away from the vehicle in which he was seated, and then attempted to eat the marijuana. Officer Brezik had observed the marijuana on Gates's lap, suspected that he was attempting to conceal or discard the substance, and ultimately recovered the marijuana after ordering Gates to spit it out.

---

[3] The parties do not point to the record to show that the trial court recommended a mental health evaluation as a part of sentencing. We not that the appellant's appendix includes an order of commitment to community corrections file-stamped March 21, 2013, the date of sentencing, but does not indicate that Gates was ordered to receive a mental health evaluation or treatment. The appellant's appendix also includes notices of violation, on April 4 and 9, 2013, alleging in part that Gates submitted to a urine drug screen on March 26, 2013, which tested positive for marijuana and cocaine. The appellant's appendix includes an Order of Violation of Community Corrections file-stamped April 19, 2013, which states "Transfer from Emerge to MCCC-HD.  Δ to be evaluated for mental health component. [] Strict compliance," and an Order of Commitment to Community Corrections file-stamped April 19, 2013, related to "Poss of Marij," which includes a checkmark next to the item "Mental Health Evaluation/Treatment." Appellant's Appendix at 42-43.

Our review of the character of the offender reveals that defense counsel stated at the sentencing hearing that Gates had communicated to him that he has a mental illness and argued that he should not be sent to the Department of Correction, and that he has a stable residence at which he could serve home detention. The sentencing transcript reveals that the court told Gates: "I can't handle you floundering," to "be quiet," that "[i]f I have to tell you to be quiet and you interrupt me again, I am going to find you in direct contempt," that "you're flopping around like a fish out of water, you're throwing your arms around counsel table," and that "[y]ou have got to behave." Transcript at 45. Gates stated "Yes sir, I'm sorry I got berry (sic) nerves, I'm sorry." Id. The court later said "I'm trying to be very patient with you" and that Gates would have "a chance to say anything you want later on." Id. at 46.

The court noted, since there was no PSI, that its file showed that Gates had convictions for two counts of conversion as misdemeanors in 1990 or 1991, operating without receiving a license in 1991, battery as a misdemeanor in 1991, "another driving case" in 1992, "resisting" as a misdemeanor in 1994, a DUI as a misdemeanor in 1995, a "gun case" as a misdemeanor in 1996, "cocaine" as a class D felony in 1995, a DUI as a class D felony in 1999, a "disorderly" in 1998 and again in 2002, "public intox" in 2004, a "resist" in 2005, a "resist as a felony" in 2005, domestic battery in 2005, invasion of privacy in 2006, "felony invasion of privacy" in 2007, "misdemeanor invasion of privacy" in 2008, a "resist" as a class D felony in 2009, and a DUI as a misdemeanor in 2010. Id. at 47. Defense counsel indicated that the court's recitation accurately outlined Gates's convictions. When the court asked Gates if he wished to say anything, Gates

9

stated in part "I knew I was guilty of this weed a long time ago before this stuff even started," "I tell you, . . . when I had pissed on myself, the guy found that I had something in my mouth," "I didn't know they were gonna charge, you know, it was gonna be a bigger deal than that," and "I wasn't tryin' to fool them cops or nothing." Id. at 48-49. The court asked if Gates received a disability check, and Gates responded affirmatively and stated that child support was taken from the check.

After due consideration of the trial court's decision, we cannot say that Gates has met his burden of showing that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.[4]

## CONCLUSION

For the foregoing reasons, we affirm Gates's conviction and sentence for attempted obstruction of justice as a class D felony.

Affirmed.

ROBB, C.J., and BARNES, J., concur.

---

[4] To the extent Gates argues that the trial court abused its discretion in sentencing him because it failed to identify mental illness as a mitigating circumstance, we note that "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied; see also Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that in the absence of a proper sentencing order, we may either remand for resentencing or exercise our authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), reh'g denied; Shelby v. State, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), trans. denied. Accordingly, we need not address any contention that the court abused its discretion in sentencing Gates as we have determined that his sentence is not inappropriate.