ATTORNEYS FOR APPELLANT
Anna Onaitis Holden
Ann M. Sutton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Nicole M. Schuster
Deputy Attorney General
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0812-CR-00630

CHRISTOPHER BAILEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F19-0711-CM-242612
The Honorable Rebekah Pierson-Treacy, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0801-CR-65

**June 18, 2009**

**Shepard, Chief Justice.**

Christopher Bailey, convicted of battery and disorderly conduct as the result of an early morning confrontation in his high school, has argued on appeal that there is insufficient evidence to support his convictions. The Court of Appeals agreed and reversed both convictions. We granted transfer and now affirm on both counts, concluding that the evidence demonstrates Bailey intentionally touched the assistant principal in a rude, insolent, or angry manner and also engaged in tumultuous conduct with the dean of students.

## Facts and Procedural History

On the morning of November 14, 2007, Christopher Bailey was in the cafeteria at Perry Meridian High School in Marion County. Assistant Principal Sarah Brewer was monitoring morning breakfast service when she asked Bailey to pull up his pants. (Tr. at 11.) Bailey refused and was upset in general. (Tr. at 11-12.) Assistant Principal Brewer extended her arm in an effort to prevent Bailey from walking to another cafeteria line and direct him towards the dean's office. Bailey angrily pushed through Assistant Principal Brewer's arm using his body while keeping his hands at his sides. (Tr. at 11-12, 14, 22-26.)

Ten or fifteen feet away from this encounter, Dean of Students Brian Knight observed Bailey push through Ms. Brewer's arm. (Tr. at 13-14, 29.) When the dean moved closer to confront Bailey, Bailey threw down his drink and coat, stepped towards the dean, coming within six to twelve inches of his face, and began to unleash a series of obscenities while standing with his fist clinched at his sides. (Tr. at 14-15, 27-30.) About this moment Perry Township School Police Officer Douglas Hunter, summoned to the scene from traffic duty, entered the cafeteria and observed a group of students watching Bailey's tirade against Dean Knight. Once Bailey saw the officer approaching, he backed away and calmly left the cafeteria area heading towards the dean's office. Bailey was arrested shortly thereafter.

The State charged Bailey with battery, as a Class B misdemeanor, Ind. Code § 35-42-2-1 (2008) and disorderly conduct, as a class B misdemeanor, Ind. Code § 35-45-1-3 (2008). Following a bench trial, Bailey was found guilty on both counts. Bailey appealed, and the Court of Appeals reversed. Bailey v. State, 893 N.E.2d 749 (Ind. Ct. App. 2008). We granted transfer and now affirm the judgment of the trial court.

## Standard of Review

Bailey contends there is insufficient evidence to support his convictions. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Henley v. State, 881 N.E.2d 639, 652 (Ind. 2008). "We

consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

## I. The Evidence to Support Battery

To convict Bailey of battery, the State was required to prove he "knowingly or intentionally touche[d] another person in a rude, insolent, or angry manner." Ind. Code § 35-42-2-1 (2008). The charging information specified that Bailey knowingly touched Assistant Principal Brewer. Indiana's General Assembly has defined knowingly:

> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

Ind. Code § 35-41-2-2 (2008). Bailey contends he did not knowingly touch Brewer.[1]

Assistant Principal Brewer testified she "put [her] arm out to tell him he needed to leave if he wasn't going to comply and he pushed through my arm." (Tr. at 11.) She explained that Bailey did not use his hands, but used his body to push through her arm. (Tr. at 11-12.) Dean Knight testified he was ten to fifteen feet away when he observed Bailey, who "pushed his way through Miss Brewer, who had put her arm out." (Tr. at 14.) The trier of fact could infer Bailey's push or physical movement of disrespect, indicating he was not going to comply with Brewer's request, constituted a knowing touching in a rude, insolent, or angry manner.

Moreover, Bailey's own testimony provided an inference that a knowing touching occurred in an angry or insolent manner. Bailey initially insisted that he did not touch Brewer: "I didn't touch her or nothing, you know. I had my hands down. I was just walking through." (Tr. at 23.) Upon cross-examination, however, he conceded that although he did not touch her using his hands, he may have touched her with another part of his body.

---

[1] We need not address Bailey's arguments concerning whether he intentionally touched Brewer as he was charged with "knowingly" touch[ing] Sarah Brewer." (App. at 13.)

3

| | |
|---|---|
| Prosecutor: | But did you touch her arm? |
| Bailey: | No, ma'am. |
| Prosecutor: | Not with your body? |
| Bailey: | No. I had my hand down. I was pulling my pants. |
| Prosecutor: | Would some other part of your body have touched her arm? |
| Bailey: | I mean, she had it right there. |
| Court: | Your answer was what? I didn't hear you. |
| Bailey: | Yes. She had it right there. She had her arm there. |

(Tr. at 25.) Bailey also admitted being angry when he interacted with Brewer. (Tr. at 26.)

How close Bailey was to Assistant Principal Brewer at the moment she extended her arm is a legitimate question of fact bearing on whether Bailey committed a knowing touching. Here, the testimony by the school staff and by Bailey provided the trier of fact with sufficient evidence to conclude Bailey was aware that Assistant Principal Brewer's arm barred his way and knowingly pushed through it. We conclude the State proved a knowing touching in a rude, insolent, or angry manner.

## II. The Evidence on Disorderly Conduct

To convict Bailey of disorderly conduct, the State was required to prove he recklessly, knowingly, or intentionally engaged in fighting or in tumultuous conduct. Ind. Code § 35-45-1-3(a)(1) (2008). Tumultuous conduct is defined as conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property. Ind. Code § 35-45-1-1 (2008). Bailey contends his actions do not rise to the requisite level to fulfill the statutory definition of tumultuous conduct.

There are relatively few Indiana decisions examining tumultuous conduct in the context of the sufficiency of the evidence to support a disorderly conduct conviction.

In Whitley v. State, 553 N.E.2d 511 (Ind. Ct. App. 1990), the Court of Appeals affirmed a disorderly conduct conviction arising out of a "neighborhood disturbance" between two groups

4

of women. Id. at 512. After police arrived and separated the groups, Whitley continued to taunt the other group. Id. On appeal, she challenged whether yelling could be tumultuous conduct. The court held the language of the statute was unambiguous and Whitley's physical struggle with police while they attempted to handcuff her and her conduct before her arrest, in each occasion, created a likelihood that serious bodily injury or substantial property damage would result. Specifically, the court pointed to the racial nature of the confrontation and Whitley's persistence in yelling and taunting the other group, before her arrest, could have led to a fight between the groups. Id. at 513-514. In dissent, Judge Sullivan noted the likelihood of serious bodily injury from Whitley's conduct prior to her arrest was insufficient, as at least three police officers were present at the "crucial time." Id. at 515.

The Whitley court relied in part on Gebhard v. State, 484 N.E.2d 45 (Ind. Ct. App. 1985), although it noted that Gebhard involved the adequacy of charging information, not the sufficiency of the evidence. Whitley, 553 N.E.2d at 513 n.3. In Gebhard, the defendant was convicted under the tumultuous conduct section of disorderly conduct statute for "walking out into the hallway of [an] apartment house . . . , and displaying a .45 caliber handgun in his hand with the purpose of confronting anyone in the hallway . . . " Gebhard, 484 N.E.2d at 47. The court determined the statutory definition of tumultuous conduct "contemplates physical activity on [the defendant's] part rising to the level that either people are seriously injured or property substantially damaged, or that either is likely to occur." Id. at 48.

The court also explained that the words "engages in" contained in the disorderly conduct statute "obviously requires [sic] present, completed conduct which is likely to injure persons." Id. It reversed Gebhard's conviction, holding that the information alleged "an offense that may happen, a future act, a contingency, that is, a chance encounter with some person or persons. Walking in an empty hall with a pistol is not tumultuous conduct because it does not rise to the level that persons are immediately likely to be seriously injured." Id. The court concluded "IF persons had appeared and IF Gebhard had menaced them with a loaded pistol, a different result may have been reached." Id. at 48-49.

Counsel for Bailey reads these cases as suggesting that finding a probability of violence is warranted only when it seems that a defendant's moves are likely to provoke the opposing party to respond with actions that would lead to serious bodily injury (that is to say, in this case, only if it seemed Dean Knight might escalate to violence). (Appellant's Br. at 6.) To be sure, disorderly conduct may be found under such circumstances, but the statute is not so confined. Disorderly conduct may also occur when the aggressor appears well on his way to inflicting serious bodily injury but relents in the face of superior force or creative resistance.

For example, In B.R. v. State, 823 N.E.2d 301 (Ind. Ct. App. 2005), the Court of Appeals held the evidence was sufficient to convict B.R. of disorderly conduct under tumultuous conduct. B.R., a student, approached another student in anger, and in the midst of a heated argument, pointed an open or unsheathed knife at the other student and the immediate danger of serious bodily injury was only defused when the threatened student struck B.R. and left. Id. at 307.

By contrast, the Court of Appeals addressed tumultuous conduct in a civil law context in N.J. ex rel. Jackson v. Metropolitan School Dist. Of Washington Twp., 879 N.E.2d 1192 (Ind. Ct. App. 2008). The court held that the conduct of N.J., yelling at another girl on a school bus but never approaching her, was not enough to demonstrate that serious bodily injury or substantial property damage was likely to occur. Id. at 1197-1198.

Here, Bailey's conduct was closer to B.R.'s than to N.J.'s. Bailey threw down his drink and his coat and the trier of fact inferred this equaled "throwing down the gauntlet, as in I'm throwing it down so I have my arms free to fight you." (Findings of the Court Tr. at 39.) Bailey *stepped towards* Dean Knight in an angry manner, clinched up his fists at his sides and let out a series of obscenities all within inches of Dean Knight's face. The record indicates Bailey backed away from Dean Knight only upon seeing Officer Hunter. It was reasonable for the trier of fact to conclude that, but for the officer's arrival, Bailey's conduct would have escalated. Although Bailey did not produce a weapon as B.R. did, his clinched fists and the testimony of Dean Knight ("I felt like he was ready to hit me") were sufficient to conclude serious bodily injury was *likely* to result.

The trier of fact could reasonably infer that serious bodily injury would result had Officer Hunter not arrived given Bailey's anger in approaching Dean Knight, throwing his coat and drink, his verbal tirade, and his clinched fists. The evidence was thus sufficient to convict.

## Conclusion

We affirm the convictions for battery and disorderly conduct.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.