**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHNATHAN ROBINSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A05-1304-CR-178 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1212-FD-1218

**November 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Johnathan Robinson appeals his conviction for inhaling toxic vapors as a class B misdemeanor. Robinson raises one issue, which we restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

On December 3, 2012, Hendricks County Sheriff's Deputy Joshua Nohren observed a vehicle cross the center line, travel into oncoming traffic lanes, and then stop on the shoulder of the opposite side of the road. As Officer Nohren approached the vehicle, he observed Robinson "digging in the center console." Transcript at 185. Robinson was "slumped over," his "eyes [were] real wide," and "his speech was severely slurred." Id. Officer Nohren attempted to have Robinson exit the vehicle, but he "just like [] slump[ed] and [] just [came] completely out of the vehicle because again his motor function skills [were] completely gone." Id. at 186-187. Robinson "left the vehicle in drive the whole entire time," and, when he "slump[ed] out of the vehicle, the vehicle . . . start[ed] taking off," and Officer Nohren began "jerking on the steering wheel." Id. at 187. Robinson put his foot on the brake and they placed the vehicle in park. Officer Nohren noted that Robinson "would attempt to try to speak but it was so slurred [he] couldn't even understand." Id. at 189. Officer Nohren called for assistance from additional officers, and while waiting for them to arrive, noticed that Robinson began to speak more clearly, was able to walk on his own, and no longer had his head down. Officer Nohren recognized that Robinson's impairment was short-term and consistent with inhaling toxic vapors.

Officer Nohren noticed that the center console lid was "still half cracked up" and that "[w]hat was stopping that lid from the center console from coming down was an aerosol can." Id. at 192. The aerosol can was Dust-Off, a dust and lint removal spray. Officer Nohren noticed that the aerosol can was "freezing cold," which indicated that "it had been used." Id. After being placed under arrest and advised of his Miranda rights, and in Officer Nohren's patrol vehicle, Robinson admitted that he had inhaled the Dust-Off in order to "get high" and stated that he believed the drug test at the work release center would not disclose that he had inhaled the substance. Id. at 196.

On December 4, 2012, the State charged Robinson with operating while intoxicated as a class A misdemeanor, inhaling toxic vapors as a class B misdemeanor for inhaling the fumes of difluoroethane, and driving left of center as an infraction. On December 12, 2012, the State filed a motion to amend the charge for operating while intoxicated to a class D felony because Robinson had a conviction for operating while intoxicated within the previous five years. The court granted the motion. On February 15, 2012, the State amended the charge for inhaling toxic vapors to allege that Robinson inhaled the fumes of a "chemical having the property of releasing toxic vapors." Appellant's Appendix at 12. At Robinson's jury trial, the State presented the testimony of Officer Nohren and Dr. Scott Kriger, a forensic toxicologist. Robinson testified that, while driving his vehicle back to the work release center, he saw a squirrel darting across the road, swerved to the left to avoid hitting the squirrel, ran up over the median, and then hit a stop sign with his right mirror. Robinson also testified that he had used the Dust-Off to clean his cell phone. The jury found him guilty as charged. The court sentenced him

3

to 1095 days with 365 days suspended for his conviction for operating while intoxicated as a class D felony, and to a concurrent term of 180 days for his conviction for inhaling toxic vapors as a class B misdemeanor.

## ISSUE AND STANDARD OF REVIEW

The issue is whether the evidence is sufficient to sustain Robinson's conviction for inhaling toxic vapors as a class B misdemeanor.[1] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

## DISCUSSION

Robinson argues that the State failed to prove beyond a reasonable doubt that the substance present in the Dust-Off can was a "chemical having the property of releasing toxic vapors." Appellant's Brief at 6. The offense of inhaling toxic vapors is governed by Ind. Code § 35-46-6-2, which provides: "A person who, with intent to cause a condition of intoxication, euphoria, excitement, exhilaration, stupefaction, or dulling of the senses, ingests or inhales the fumes of: . . . (3) any other chemical having the property of releasing toxic vapors . . . commits inhaling toxic vapors, a Class B misdemeanor."

---

[1] Robinson does not appeal his conviction for operating while intoxicated or the finding that he drove left of center.

4

Robinson's sole argument is that the State failed to establish "that any substance in the Dust-Off can fell within the statutory language." Appellant's Brief at 11. Specifically, Robinson asserts that Officer Nohren "did not testify that in either his training or experience, he had ever dealt with a case involving Dust-Off or its chemical compound," that Officer Nohren did not specifically identify the chemical compound in Dust-Off or that it had the property of releasing toxic vapors, and that he was not an expert on intoxication by inhaling Dust-Off. Id. Robinson further asserts that the chemicals named by Dr. Kriger as those generally found in this type of aerosol are not listed in Ind. Code § 35-46-6-2 and that Dr. Kriger did not explicitly state that the chemical present in Dust-Off, difluoroethane, is a chemical having the property of releasing toxic vapors. Robinson also argues that, while difluoroethane is listed as an ingredient on the can of Dust-Off, the toxicologist did not perform a chemical analysis on the contents of the can. The State maintains that ample evidence demonstrated that the gas has the property of releasing toxic vapors, and that Robinson appeared intoxicated in a manner consistent with the effects of inhaling difluoroethane, that the label on the Dust-Off can states that it contained difluoroethane, and that during trial Dr. Kriger testified that the case involved toxic vapors and the possible effects of inhaling difluoroethane.

In Vasquez v. State, the Indiana Supreme Court addressed whether the State presented evidence sufficient to prove that the substance inhaled by the defendant was toluene, a drug listed under Ind. Code § 35-46-6-2(2). 741 N.E.2d 1214, 1216 (Ind. 2001). The Court held that the "identity of a drug can be proven by circumstantial evidence," that "[t]he opinion of someone sufficiently experienced with the drug may

5

establish its identity, as may other circumstantial evidence," that, "[a]lthough chemical analysis is one way, and perhaps the best way, to establish the identity of a compound, persons experienced in the area may be able to identify cigarette smoke, marijuana, and even toluene," and "[t]his is true even if every citizen may not be up to that task." Id. at 1216-1217. The Court noted in Vasquez that there was testimony of those familiar with the substance and other circumstantial evidence and that although not experts the officers testified that based on their observations and experience the substance smelled and looked like toluene. The Court held that the officers' testimony was sufficient to support the finding that the substance contained toluene. Id. at 1217.

The evidence most favorable to Robinson's conviction reveals that Officer Nohren discovered the Dust-Off can close to the driver's seat of Robinson's vehicle, that the can was cold indicating recent use, and that Robinson appeared impaired. The can of Dust-Off admitted into evidence contained a written label stating that the can contained difluoroethane. In addition, the label warned that intentional misuse or abuse of the product could be fatal. Dr. Kriger testified that he was the chief forensic toxicologist at the Indiana State Department of Toxicology, that he had about seventeen years of experience in the field, and that he had been working in forensics for about eight years. When asked what kind of chemicals are in aerosol cans such as Dust-Off, Dr. Kriger testified "they're generally referred to as refrigerants, [] either chlorofluorocarbons or fluorohydrocarbons." Transcript at 283. Dr. Kriger indicated that an individual can become intoxicated by the use of those inhalants. When asked to describe to the jury how an individual can become intoxicated from inhaling the ingredients of a Dust-Off

6

can, Dr. Kriger testified that "[o]ne of the primary ingredients in this particular can is something called difluoroethane and individuals that either huff or they inhale this substance and what happens is it gets absorbed through the lung - through the lung tissue, transferred into the blood and then very rapidly transported to the brain." Id. Dr. Kriger testified that "individuals that [] inhale this particular chemical suffer from a multitude of potential problems," including potential death caused by cardiac arrest, and the individuals may experience significant spatial and temporal distortions, poor muscle dexterity and movement, poor balance, slurred speech, loss of consciousness, pupil dilation, and elevated body temperature. Id.

The jury was able to consider the evidence and testimony regarding Robinson's condition when approached by Officer Nohren, and determine whether Robinson inhaled fumes from the can of Dust-Off and whether the Dust-Off included a chemical having the property of releasing toxic vapors. Based upon our review of the evidence as set forth in the record and discussed above, we conclude that sufficient evidence exists from which the jury could find Robinson guilty beyond a reasonable doubt of inhaling toxic vapors as a class B misdemeanor. See Vasquez, 741 N.E.2d at 1217 (finding the evidence was sufficient to support the finding that the substance inhaled by the defendant was a substance identified in Ind. Code § 35-46-6-2 and affirming the defendant's conviction for inhaling toxic vapors); Upp v. State, 808 N.E.2d 706, 707-708 (Ind. Ct. App. 2004) (finding the evidence was sufficient to support the inference that the bag into which the defendant had been breathing contained glue and that the defendant was impaired and

thus holding that the evidence was sufficient to support the defendant's class B misdemeanor conviction under Ind. Code § 35-46-6-2).

CONCLUSION

For the foregoing reasons, we affirm Robinson's conviction for inhaling toxic vapors as a class B misdemeanor.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.