## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 20 2015, 9:49 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Graham T. Youngs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Troy Shawn Meyers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 20, 2015

Court of Appeals Cause No.
45A03-1405-CR-176

Appeal from the Lake County
Superior Court
Cause No. 45G01-1303-MR-5

The Honorable Salvador Vasquez,
Judge

**Barnes, Judge.**

# Case Summary

Troy Meyers appeals his conviction for Class C felony involuntary manslaughter. We affirm.

# Issue

Meyers raises one issue, which we restate as whether the evidence is sufficient to sustain his conviction.

# Facts

In 2012, Miguel and Anna Dozier lived in an apartment in Lake Station with their children. Meyers, his wife, Shannon, and their infant lived in the apartment above the Dozier family. Approximately two or three times a week, the Doziers would hear verbal and physical arguments coming from the upstairs apartment. Three or four days before September 10, 2012, Anna heard an argument between Meyers and Shannon. She heard Meyers yell at the baby "to shut up," heard Shannon tell Meyers "not to yell at the baby," and then heard Meyers say it again. Tr. p. 54. Miguel heard arguing, running, and a "big thud" that sounded like someone being thrown to the floor. *Id.* at 80. Miguel later saw Shannon outside pushing a baby stroller and the left side of her face was swollen.

At 2:30 a.m. on September 10, 2012, Meyers called 911 and reported that Shannon was vomiting blood. When the ambulance arrived, they discovered Shannon sitting next to the bed with her head slumped forward and with a bowl on her lap that contained "coffee ground emesis," which is "blood from the

stomach that's been digested and it's been vomited up." *Id.* at 105. Meyers was "[v]ery, very calm" when they arrived. *Id.* The paramedics found that Shannon was not breathing and had no pulse. They started CPR and transported her to the hospital, but they were unable to revive her. Meyers reported that Shannon had been drinking alcohol that evening, that she had been vomiting, and that she had a history of alcoholism and seizures.

[5] An autopsy revealed that Shannon had extensive bruises on her body, especially on the left side of the neck, the left side of the head, the left shoulder, the left arm, the scalp, and the back of the head. Some of the bruises were "a day or less old," while others were a few days old. *Id.* at 467. Some of the bruising appeared to be caused by "a cylindrical object." *Id.* at 469. The forensic pathologist also discovered a fracture of the C-2 vertebrae in Shannon's neck. There also was a "shard of bone" from the fracture that tore a hole in her esophagus. *Id.* at 481. Some of the bruising on Shannon's neck corresponded with the location of the fracture. The cause of Shannon's death was "blunt force injuries of the head and neck." *Id.* at 490. The forensic pathologist determined that Shannon's neck injury was caused by "some kind of force against the left side of the neck, with the head against an unyielding surface." *Id.* at 491. He noted that substantial force would have been required to inflict the injury and suggested that Shannon's injury could have been caused by a foot stomping or a running fist punch. He also opined that Shannon's injury could not have been caused by a fall and that the time between her neck injury and death was probably not more than a day.

When Detective Brian Williams of the Lake Station Police Department interviewed Meyers, Meyers stated that Shannon had not been eating for three or four days. She had also been complaining of neck pain, vomiting, and falling down all the time for the last two days of her life. Meyers denied hitting Shannon and suggested that she was injured while falling. A warrant was later issued for Meyers's arrest, and he was located in Arizona.

The State charged Meyers with murder. At the jury trial, the trial court instructed the jury on the lesser included offenses of voluntary manslaughter and involuntary manslaughter. The jury found Meyers guilty of Class C felony involuntary manslaughter. The trial court sentenced Meyers to six years in the Department of Correction. Meyers now appeals.

## Analysis

Meyers argues that the evidence is insufficient to sustain his conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

At the time of Meyers's offense, Indiana Code Section 35-42-1-4(c) governed the offense of involuntary manslaughter and provided: "A person who kills

another human being while committing or attempting to commit: . . . (3) battery; commits involuntary manslaughter, a Class C felony." According to Meyers, the evidence is insufficient to sustain his conviction because there was no evidence of how Shannon sustained the neck fracture and no evidence that Meyers caused the fracture. Meyers points out that Shannon had a seizure disorder and was very intoxicated at the time of her death. Meyers argues that "[t]here is no evidence to support the conclusion that the falling and subsequent bruising did not result from the seizures or Shannon's severely intoxicated state." Appellant's Br. p. 10. Meyers also argues that the timing of his alleged argument with Shannon three to four days before her death is not compatible with the pathologist's testimony that Shannon's injury happened "more than a few hours before death, certainly less than a day." *Id.*

[10] Meyers's argument is merely a request that we reweigh the evidence, which we cannot do. The State presented evidence that Meyers and Shannon fought often and that they had fought in the days leading up to Shannon's death. The State also presented evidence that Shannon had extensive bruises on her body and that some of the bruising appeared to be caused by "a cylindrical object." Tr. p. 469. The forensic pathologist testified that Shannon's neck was broken, that a hole was torn in her esophagus as a result of the broken neck, and that the neck injury was inconsistent with a fall. The forensic pathologist also determined that Shannon's neck injury was caused by "some kind of force against the left side of the neck, with the head against an unyielding surface." *Id.* at 491. He noted that substantial force would have been required to inflict

the injury and suggested that Shannon's injury could have been caused by a foot stomping or a running fist punch. Meyers admitted that Shannon had not been eating for three or four days, that she had been complaining of neck pain, that she had been vomiting, and that she kept falling down for the last two days of her life. We conclude that the State presented sufficient evidence that Meyers killed Shannon while committing battery.

## Conclusion

[11] The evidence is sufficient to sustain Meyers's conviction for involuntary manslaughter. We affirm.

[12] Affirmed.

May, J., and Pyle, J., concur.