## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jaquecke Hughes,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 31, 2016<br><br>Court of Appeals Case No.<br>49A05-1601-CR-10<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G19-1506-CM-20715 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jaquecke Hughes (Hughes), appeals her conviction for disorderly conduct, a Class B misdemeanor, Ind. Code § 35-45-1-3(a)(1) (2014).

We reverse.

## ISSUE

Hughes raises one issue on appeal, which we restate as follows: Whether the State presented sufficient evidence to support her conviction for disorderly conduct.

## FACTS AND PROCEDURAL HISTORY

On June 12, 2015, Officer Michael Roach (Officer Roach) of the Indianapolis Metropolitan Police Department was dispatched to 1853 North Holmes Avenue, Indianapolis, in Marion County, Indiana, in response to a disturbance among some family members. When he arrived, he discovered that two of the residents, Hughes and her mother, were having a disagreement about their living arrangement. Officer Roach discerned that Hughes was living in her mother's home, and her mother wanted to evict her. Hughes explained to Officer Roach "that she was currently trying to find another place to live." (Tr. p. 7). Officer Roach observed that "[e]verybody was angry," and he attempted to diffuse the situation by suggesting that Hughes' "mother let [Hughes] have some time to find a new place to live. And everybody agreed to that." (Tr. p. 7). Feeling that the situation had been resolved, Officer Roach left the scene.

[5] Approximately five minutes later, Officer Roach was dispatched to return to the residence. When he arrived, he observed "at least four people" outside, which included Hughes, Hughes' mother, Hughes' sister, and Hughes' girlfriend. (Tr. p. 9). "It appeared by looking at the area that there had been some type of fight or altercation." (Tr. p. 8). "Specifically there was a chair that was on the patio when we left. It was in the grass. There was a purse scattered about in the grass. And there were multiple people that were still very angry." (Tr. p. 9). Hughes reported to Officer Roach that her mother had initially left the residence after the officer's first visit, but she "came back and started an altercation." (Tr. p. 9). Officer Roach could not recall whether Hughes stated that she had fought back when her mother began the altercation.

[6] Officer Roach observed "a very small cut to the top of [Hughes'] lip" as well as injuries to Hughes' neck. (Tr. p. 10). Officer Roach recalled that Hughes' mother "had a small abrasion above her eye," and Hughes' sister complained of some type of "pain." (Tr. p. 29). Hughes' girlfriend also had injuries to her face and neck. Officer Roach opined that, based on his training and experience, during the five minutes that he was gone from the scene, a fight occurred. Officer Roach noted "[t]he elevated emotional status of everybody on scene. The—observing the area where the people were, it was clear that something had happened where like I said the chair had—was way off the side of the—the front porch. There was a purse in the yard. It was clear to me that there was a fight there." (Tr. p. 11). In addition, "[t]here were definitely verbal acts of aggression while we were on scene." (Tr. p. 27). Based on the fact that he

received conflicting evidence about the incident, Officer Roach arrested Hughes, her mother, her sister, and her girlfriend.

[7] On June 13, 2015, the State filed an Information, charging Hughes with one Count of disorderly conduct as a Class B misdemeanor, I.C. § 35-45-1-3(a)(1) (2014). On December 14, 2015, the trial court conducted a bench trial. Following the State's case-in-chief, Hughes moved for dismissal pursuant to Trial Rule 41(B). Hughes argued that the State had failed to present any evidence that she engaged in a fight. The trial court denied Hughes' motion to dismiss. During the defense's case-in-chief, Hughes testified that there had been a physical altercation, during which her mother had choked her and her sister had been hitting her. Hughes also testified that she was outmatched by her mother and her sister, who are both larger than her, so she was unable to even defend herself. She specifically stated, "I didn't swing, I just tried not to fall." (Tr. p. 38). Hughes further added that after a bystander helped remove her mother and sister, they turned their attention to Hughes' girlfriend and "attacked" her. (Tr. p. 39). At the close of the evidence, the trial court found Hughes guilty and, immediately thereafter, sentenced her to serve fourteen days in the Marion County Jail.

[8] Hughes now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[9] Hughes claims that there is insufficient evidence to uphold her conviction for disorderly conduct as a Class B misdemeanor. When reviewing the sufficiency

of the evidence necessary to uphold a criminal conviction, our court does not reweigh evidence or assess the credibility of witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* So long as "there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt," we will affirm the conviction. *Id.*

[10] In order to convict Hughes of disorderly conduct, the State was obligated to prove that she "recklessly, knowingly, or intentionally . . . engage[d] in fighting or in tumultuous conduct." I.C. § 35-45-1-3(a)(1) (2014). Here, the State relied on the fighting prong, rather than on the tumultuous conduct prong. On appeal, Hughes claims that the State presented no evidence that she "'engaged in' fighting as a willing participant." (Appellant's Br. p. 9). We agree with Hughes.

[11] According to the dictionary definition, "engage" means, in relevant part, "to start fighting against (an opponent)"; "to enter into contest or battle with"; or "to do or take part in something." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/engage (last visited Aug. 16, 2016). Thus, to have engaged in fighting for the purposes of disorderly conduct, there must be evidence that Hughes recklessly, knowingly, or intentionally participated in the fight. Here, State relied entirely on the testimony of Officer Roach and some photographs that were taken at the scene. This evidence establishes that Officer Roach did not witness any physical altercation. Rather, when he returned to

the scene, he noticed that there was a chair in the yard, which had been on the porch during his first call to the house, and there was a purse in the yard. There is no indication in the record as to how or why either of these items ended up in the yard.

[12] The photographic evidence establishes that Hughes received slight injuries to her face and neck, as did her girlfriend. Officer Roach testified that Hughes' mother sustained "a small abrasion above her eye,"[1] and Hughes' sister made a complaint of "pain." (Tr. p. 29). However, there is no evidence to establish who, of the four people present, inflicted which injuries upon whom. It is entirely possible that Hughes' mother and sister sustained their purported injuries by fighting with Hughes' girlfriend or as simply the result of their own aggression against Hughes. On direct examination, Officer Roach testified that he could not recall whether Hughes had reported that she "fought back" against her mother and sister, and during her case-in-chief, Hughes claimed that she was overpowered by her mother and sister and never took any "swing[s]." (Tr. pp. 9, 38). Thus, there is no evidence before our court that establishes beyond a reasonable doubt that Hughes actively participated in the fighting match.

[13] We do note that the trial court appears to have found that Hughes lacked credibility, as indicated by the trial court's comment that "Hughes testified in a heart-felt manner when her own attorney was questioning her. On cross her

---

[1] In our examination of the exhibits, we are unable to discern any such "abrasion." (Tr. p. 29).

tone changed rather dramatically.  Court finds the State has met its burden."
(Tr. p. 45).  We recognize that it is the role of the trial court, not our court, to
assess the credibility of witnesses.  Even assuming that the trial court entirely
discredited Hughes' testimony, we find that the remaining evidence—*i.e.*,
Officer Roach's testimony—fails to establish that Hughes engaged in the
fighting.

## CONCLUSION

[14]  Based on the foregoing, we conclude that the State presented insufficient
evidence to prove that Hughes engaged in fighting to support her conviction for
disorderly conduct.

[15]  Reversed.

[16]  Bailey, J. and Barnes, J. concur