## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2016, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Preston Smith, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 9, 2016 <br><br> Court of Appeals Case No. 71A05-1601-CR-149 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jerome Frese, Judge <br><br> Trial Court Cause No. 71D03-1410-FB-76 |

**Pyle, Judge.**

# Statement of the Case

[1] Preston Smith ("Smith") appeals his conviction, following a jury trial, for Class B felony sexual misconduct with a minor.[1] On appeal, he argues that there was insufficient evidence to support his conviction and that we should reverse his conviction because his victim's testimony at trial was incredibly dubious. Because we find that there was sufficient evidence to support his conviction and his victim's testimony was not incredibly dubious, we affirm his conviction.

[2] We affirm.

# Issues

Whether there was sufficient evidence to support Smith's conviction.

# Facts

[3] In the spring of 2013, Malissa Wysocki ("Wysocki") and her two children moved into an apartment with her boyfriend, Eugene Lamphier ("Lamphier") and his daughter, K.L., in Walkerton, Indiana. Wysocki's two children slept in the bigger of the apartment's two bedrooms, while Wysocki and Lamphier slept in the living room. Fourteen-year-old K.L. slept by herself in the smaller of the apartment's two bedrooms.

---

[1] IND. CODE § 35-42-4-9. Notably, this statute was amended effective July 1, 2014, and Smith's offense would now be considered a Level 4 felony. However, we will apply the statute in effect at the time of the offense.

[4]     In May 2013, K.L. met Wysocki's younger brother, twenty-two-year-old Smith, who began to stay at their apartment periodically. He worked in Covington, Kentucky, during the summer of 2013, but he returned to Walkerton and stayed with Wysocki on some of the weekends that he did not work.

[5]     In June 2013, Smith was staying with Wysocki when Lamphier told him and K.L. to go to K.L.'s room and watch a movie so that he and Wysocki could get to sleep in the living room. However, when Smith and K.L. went to K.L.'s room, Smith asked her if she wanted to have sex, and she said that she did. They had sex that night and then continued to have sex multiple times throughout the summer. They never used condoms, and K.L.at one point began to suspect that she was pregnant because her period was two weeks late. Smith bought her a pregnancy test to check, and it turned out that she was not pregnant.

[6]     Throughout the summer, Smith and K.L. frequently sent each other cell phone texts and Facebook messages. K.L.'s sister, H.L., knew that K.L. and Smith were—per H.L.'s description—"boyfriend and girlfriend" because she would text Smith on K.L.'s behalf when K.L. was in the shower. (Tr. 165). K.L. would tell H.L. what to say, and H.L. would type the message. If Smith sent K.L. a message back, H.L. would then read the message to her.

[7]     In early August 2013, H.L. told their mother, Tearny Scribner ("Scribner") about K.L. and Smith. Scribner confirmed H.L.'s story with K.L. and then took her to the Walkerton Police Station where police officers interviewed her.

[8]     Subsequently, the State charged Smith with Class B felony sexual misconduct with a minor. The trial court held a jury trial from November 30, 2015 through December 3, 2015. At trial, K.L. testified that she and Smith had not really "been boyfriend/girlfriend . . . [b]ut [] did have sexual relations." (Tr. 58). She estimated that she and Smith had had sex "[m]ore than twenty times" throughout the course of the summer, although she could not remember many specific dates. (Tr. 59). The only date that she could remember was the Fourth of July, on which she testified that she had sex with Smith at his mother's house while they were there celebrating the holiday.

[9]     Also during the trial, the State introduced records of cell phone texts and Facebook messages that they had recovered from K.L.'s phone and Facebook account. Both K.L. and Smith stipulated that they had written the messages. Among other relevant texts, Smith wrote in one message that he was going to miss K.L.'s kisses and that hers were the best because she had "the biggest puffiest softest warmest lovyest lips ever." (State's Ex. 1). Smith also told K.L. in that same exchange that she was "an outstanding lover." (State's Ex. 1). On July 22, 2013 Smith and K.L. exchanged the following texts:

> [K.L.:] Oh yeah & thanks for the hickeys on my boobs. []
>
> [Smith:] Woooh. I haven't sucked on those sugar tits for awhile. . . . im not so sure those are from me
>
> [K.L.:] I bruise easy . . . & I havent done anything with anyone else.
>
> [Smith:] Lol. Then its probably from grabbing them while you gave me one of the best nights of my life. :P

[Smith:] I remember having them in my hands squeezing pretty rough

(State's Ex. 1) (incorrect spelling, grammar, and spacing in original). On July 29, 2013, Smith sent K.L. a Facebook message stating "And was.it.just me but the other night was freakin amazing..i wish u coulda sat on it longer ..felt soo dep was it good . . be honest." (State's Ex. 2) (incorrect spelling, grammar, and spacing in original).

Last, Smith testified and denied having sex with K.L. He claimed that the texts and messages they had exchanged were "all fantasy" and that they had been "going back and forth with imagination sexting." (Tr. 379).

However, at the conclusion of the trial, the jury found Smith guilty as charged. On January 4, 2016, the trial court held a sentencing hearing and sentenced Smith to sixteen (16) years with six (6) years suspended. Smith now appeals.

## Decision

On appeal, Smith argues that there was not sufficient evidence to support his conviction. Specifically, he claims that, while K.L. testified that she had had "sex" with him or "sexual relations" with him, there was no evidence that he had physically penetrated her. In addition, he argues that K.L.'s testimony against him was not sufficient to support his conviction because it was incredibly dubious. We will address each of these arguments in turn.

When reviewing sufficiency of the evidence claims, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005

(Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[14] In order to convict Smith of Class B felony sexual misconduct with a minor, the State was required to prove that he was at least twenty-one (21) years old and: "with a child at least fourteen (14) years of age but less than sixteen (16) years of age, perform[ed] or submit[ted] to sexual intercourse or deviate sexual conduct[.]" I.C. § 35-42-4-9 (2013). The Indiana Code defines "sexual intercourse" as "an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35-31.5-2-302 (2013).

[15] Smith argues that there was not sufficient evidence to support his conviction because there was no evidence that he "penetrated" K.L. We disagree. When K.L. testified at trial regarding the first time she had sex with Smith, she and the prosecutor engaged in the following exchange:

> [Prosecutor:] And so you went in your room at this apartment with Mr. Smith and you had sex?
>
> [K.L.:] Yes.
>
> [Prosecutor:] So we need to get a little technical here for a minute. When you're talking about sex, are you talking about his penis in your vagina?
>
> [K.L.:] Yes.

[Prosecutor:]  And that was the first time that occurred?

[K.L.:]  Yes.

[Prosecutor:]  And did it ever occur after that?

[K.L.:]  Yes, it did.

(Tr. 59).  In this passage, K.L. explicitly stated that penetration occurred when she had sex with Smith.  Any arguments to the contrary are a request for us to reweigh the evidence, which we will not do.  *See Bailey*, 907 N.E.2d 1005.

[16]  Nevertheless, Smith argues that we should reverse his conviction because it was based on K.L.'s testimony, which he claims was incredibly dubious.  Generally, as stated above, this Court will not judge witness credibility.  *See id.*  One exception to this rule is the "incredible dubiosity" rule, which our supreme court described in *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (emphasis added) as follows:

> If a sole witness presents inherently improbable testimony *and there is a complete lack of circumstantial evidence*, a defendant's conviction may be reversed.  This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.  Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Smith argues that K.L.'s testimony here was incredibly dubious for a variety of reasons, including that:  (1) she originally reported to police officers that she had had sex with Smith only four or five times rather than the more than twenty times to which she testified at trial; (2) her living space was not

conducive to having sex multiple times without getting caught by her family; (3) other witnesses testified that she had not spent the night with Smith on the Fourth of July; and (4) Smith would not have been able to have sex with K.L. more than twenty times in July due to his work schedule in Kentucky.

[17] We are not persuaded that the instant case is one of the "rare" situations that we should apply the incredible dubiosity rule because it is not a situation where there is a complete lack of circumstantial evidence. *See id.* K.L.'s sister testified that she knew K.L. and Smith were "boyfriend and girlfriend" because she would text Smith on K.L.'s behalf when K.L. was in the shower. (Tr. 165). Also, the texts and Facebook messages between K.L. and Smith that were admitted at trial concerned their sexual relationship and provided circumstantial evidence to support K.L.'s testimony. In light of this additional circumstantial evidence supporting K.L.'s testimony, we conclude that K.L.'s testimony was not incredibly dubious. As Smith does not otherwise challenge the evidence supporting his conviction, we conclude that there was sufficient evidence to support his conviction.

[18] Affirmed.

Bradford, J., and Altice, J., concur.