## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2018, 7:46 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Quincy Hawkins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 29, 2018

Court of Appeals Case No.
49A04-1710-CR-2490

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1508-F1-30160

**Crone, Judge.**

# Case Summary

Quincy Hawkins appeals his conviction for level 4 felony possession of a narcotic drug following a jury trial. Hawkins argues that there was insufficient evidence to support his conviction. Finding that the evidence was sufficient, we affirm.

# Facts and Procedural History

The evidence most favorable to the verdict shows that on August 21, 2015, officers with the Indianapolis Metropolitan Police Department SWAT team executed a no-knock search warrant on Hawkins's home. In an effort to keep everyone safe, the SWAT team broke a window and used a flash bang, a diversionary device meant to disorient the occupants of a residence, as they announced their presence by yelling that they had a search warrant.

The flash bang woke and frightened Hawkins and his girlfriend, Maleisha Robinson, who had been sleeping in the master bedroom. Fearing that his home was under attack, Hawkins rolled out of bed, grabbed a rifle, and began shooting through the bedroom window and siding of the house.[1] The police did

---

[1] This case offers yet another vivid illustration of the dangers of using flash bangs during search warrant executions. Officer safety is frequently cited as a justification for flash bang usage, but Hawkins's startled (and violent) reaction to the flash bang's explosion actually put the lives of the SWAT team members at risk. In *Watkins v. State*, our supreme court cautioned that flash bangs "should be the exception in search warrant executions" and that "[t]heir extraordinary degree of intrusion will in many cases make a search constitutionally unreasonable." 85 N.E.3d 597, 603 (Ind. 2017). We have serious concerns about what appears to be an upsurge in the use of flash bangs, as well as about the standards (if any) that govern their use.

not return fire because they could not see the shooter, but continued to announce their presence. Hawkins laid down his weapon when he heard the police yelling. Robinson and two house guests exited the home, and Hawkins exited moments later. All the occupants were taken into custody.

[4] The police then searched the home. In addition to finding several firearms and a few bongs throughout the house, the police found a plastic bag containing less than a gram of heroin in a bathroom shower and less than a gram of marijuana on the dining room floor. The police also found two white paper envelopes on the dresser in the master bedroom. Each envelope contained hydrocodone pills that weighed a combined total of 15.73 grams.

[5] The State charged Hawkins with level 1 felony attempted murder, level 5 felony battery by means of a deadly weapon, level 6 felony maintaining a common nuisance, level 4 felony possession of a narcotic drug (hydrocodone), level 6 felony possession of a narcotic drug (heroin), and class C misdemeanor possession of drug paraphernalia. At trial, Robinson claimed that she obtained the hydrocodone pills via a prescription that she filled at a pharmacy, and she subsequently separated the pills into the envelopes. The jury convicted Hawkins of the two possession charges and the paraphernalia charge, but found him not guilty on the other charges. Hawkins was sentenced to seven years. This appeal ensued.

# Discussion and Decision

[6] Hawkins challenges the sufficiency of the evidence supporting his level 4 felony conviction. In reviewing an insufficient evidence claim, we do not reweigh the evidence or judge the credibility of witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Rather, we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Id.* "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.*

[7] A person who knowingly possesses a narcotic drug without a valid prescription commits possession of a narcotic drug, a level 4 felony if the amount of the drug involved is at least ten but less than twenty-eight grams. Ind. Code § 35-48-4-6(a), -(c)(1). A person actually possesses contraband when he has "direct physical control over it." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). If actual possession cannot be proven, then a conviction for possessing contraband may rest on constructive possession. *Id.* A person constructively possesses contraband when he has the intent and capability to maintain dominion and control over it. *Id.* Hawkins argues that the evidence presented at trial does not establish that he possessed the hydrocodone. He concedes that he had the capability to maintain dominion and control of the hydrocodone, but argues that the State failed to establish the intention to do so.

[8] A trier of fact may infer that the intent element is satisfied based on a defendant's possessory interest in the premises on which the contraband is found. *Id.* Circumstantial evidence is required to support this inference when the possessory interest is not exclusive. *Id.* Among the additional circumstances that will support an inference of intent to control the contraband are:

> (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns.

*Id.* at 175. This list is not exhaustive, as other circumstances could just as reasonably demonstrate a defendant's requisite knowledge. *Id.*

[9] Here, the hydrocodone pills were found in envelopes on top of a dresser in the master bedroom. It is undisputed that Hawkins regularly slept there and that he was sleeping there when the raid occurred. Thus, the envelopes containing contraband were in immediate proximity to where Hawkins was sleeping.[2] The presence of the bongs, marijuana, and heroin in plain view would support an inference that Hawkins intended to maintain dominion and control over the envelopes and their contents. Based on Hawkins's knowledge that the other

---

[2] On page 11 of his brief, Hawkins cites this Court's memorandum decision in *Funk v. State*, No. 27A02-1601-CR-170 (Ind. Ct. App. Dec. 29, 2016), *trans. denied* (2017), in violation of Indiana Appellate Rule 65(D).

drugs and drug paraphernalia were in the house, the jury could reasonably infer that he also had knowledge of and intended to maintain dominion and control over the pills inside the envelopes as well. Moreover, the jury was free to disbelieve Robinson's claim that the pills were hers, especially since no prescription was found in the home or produced at trial.

[10] Hawkins merely invites this Court to reweigh the evidence and judge the credibility of the witnesses' testimony. We must decline this invitation. Therefore, we affirm Hawkins's conviction.

[11] Affirmed.

Bailey, J., and Brown, J., concur.