



FILED

Dec 30 2025, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Daron Washington,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

December 30, 2025

Court of Appeals Case No.
25A-CR-1169

Appeal from the Marion Superior Court

The Honorable Jeffrey L. Marchal, Judge

Trial Court Cause No.
49D31-2310-F1-28067

---

**Opinion by Judge Weissmann**
Judges Bradford and DeBoer concur.

**Weissmann, Judge.**

[1] One of Daron Washington's twin four-month-old children, I.W., died while severely malnourished, but her cause of death could not be determined with medical certainty. Still, Washington was charged with and found guilty of two counts of neglect of a dependent resulting in death: one based on his failure to provide I.W. with adequate nutrition, and the other based on his failure to seek medical care for the child. Due to double jeopardy concerns, however, the trial court only entered judgment of conviction on the nutrition-based count.

[2] Washington appeals his conviction, arguing that the State failed to prove I.W.'s death resulted from his failure to provide I.W. with adequate nutrition. Given I.W.'s undetermined cause of death, we find the State failed to prove beyond a reasonable doubt that I.W. would not have died but for her malnourishment. We therefore reverse Washington's conviction on the nutrition-based count and remand to the trial court with instructions to enter judgment of conviction on the medical-care-based count.

## Facts

[3] I.W. and her twin sister, K.W., were born prematurely at Eskenazi Hospital in November 2022. The children spent 21 days in the neonatal intensive care unit but were ultimately discharged from the hospital in stable condition. Upon the children's discharge, their mother and father—Tiera Crute and Washington, respectively—were instructed to attend follow-up medical appointments and to maintain routine pediatric care. Neither parent did.

[4] One day in March 2023, Crute called Washington's sister just before 9:00 a.m. and reported that she had found I.W. unresponsive in the family's home. Washington's sister in turn called 911, and police and paramedics were dispatched to the scene. When they arrived, I.W. was in cardiac arrest. She also appeared "emaciated" with sagging skin and protruding ribs. Tr. Vol. II, p. 114. All attempts to revive I.W. were unsuccessful, and she was eventually pronounced dead at Riley Children's Hospital.

[5] When asked about the events leading up to I.W.'s death, Washington and Crute provided inconsistent narratives. Washington stated that he fed I.W. a bottle at 3:00 a.m. before laying her on a couch in the family's home to sleep. Then, at 7:00 a.m., he found I.W. unresponsive on the couch with no apparent obstruction to her nose or mouth. Crute, however, stated that she fed I.W. a bottle at 7:00 or 8:00 a.m. before I.W. fell asleep in Crute's arms. Crute then sat awake on the couch for roughly 30 minutes before noticing that I.W. was unresponsive in her arms.

[6] Medical experts later determined that I.W. was severely malnourished when she died. But her cause of death could not be determined with medical certainty. Still, the State charged both Washington and Crute with two counts of neglect of a dependent resulting in death. Count I specifically alleged that they "failed to provide [I.W.] with adequate nutrition," and Count II specifically alleged that they "failed to seek medical treatment [for I.W.]" App. Vol. II, p. 26. Crute pleaded guilty to a lesser offense, but Washington proceeded to a bench trial on both charges.

[7] At trial, the State presented the testimony of Dr. Amanda Paul, the forensic pathologist who performed I.W.'s autopsy and further investigated her death. Dr. Paul testified that I.W.'s cause of death "could not be determined." Tr. Vol. II, p. 197. According to Dr. Paul, an "undetermined" cause of death is different from a "sudden unexplained death of an infant" (SUID), which often occurs from an unknown cause during sleep. *Id.* at 179. But because Washington and Crute gave conflicting accounts of the events leading up to I.W.'s death, Dr. Paul did not have the information necessary to place I.W.'s cause of death in the SUID category. In Dr. Paul's words: "I really just don't know, so I went with undetermined. That was the best I could come up with." *Id.* at 195.

[8] Despite I.W.'s severe malnourishment, Dr. Paul could not place I.W.'s cause of death in the malnutrition category either. She explained:

> I went with an undetermined cause of death because I -- because she was underweight, I couldn't really say if it was enough of a malnourishment because if -- if she was malnourished enough to the point where I said this was definitely the cause of death, I would have listed the cause of death as malnutrition. But she's just small enough that I don't really know, but I think it does play a factor, I really do. But I just can't know with certainty, which is what I'm supposed to do when I, you know, with medical certainty -- I don't have that.

*Id.*

> I've had cases that I have called malnutrition because they were significantly smaller than even [I.W.] was. But in this case, I -- you know, it just wasn't enough that I could say with medical certainty that [malnutrition] was the cause of death, and that's

why I went with undetermined . . . in addition to the conflicting statements.

*Id.* at 201.

[9] The State also presented the testimony of Dr. Shannon Thompson, a child abuse pediatrician who consulted with the Indiana Department of Child Services after I.W.'s death. Dr. Thompson opined that I.W.'s malnutrition likely "contributed to" her death, but she could not say it was the cause. *Id.* at 243. As Dr. Thompson explained: "That would be [Dr. Paul's] role, and I essentially agreed with her findings." *Id.* But Dr. Thompson was confident that I.W. would still be alive if Washington had sought medical care for her.

[10] Additionally, the State presented the testimony of Dr. James Lemons, a neonatologist who treated I.W. while she was in the NICU following her birth. Even "without knowing" the specific diagnosis for I.W.'s death, Dr. Lemons testified that Washington's delay in seeking medical care for I.W. "almost certainly" resulted in her death. *Id.* at 98. And when asked whether he was "absolutely certain," Dr. Lemons stated: "We never say . . . always or never in medicine." *Id.*

[11] The trial court found Washington guilty of both counts of Level 1 felony neglect of a dependent resulting in death. When explaining its verdict from the bench, the court stated:

> [Defense counsel] wants to argue that we don't know why [I.W.] died. We -- we -- I agree with that, we can't know that now.

> There may have been an underlying condition. But because you didn't seek medical treatment, we couldn't figure that out and attempt to fix it. That's the problem.

Tr. Vol. III, p. 110. The court, however, only entered judgment of conviction on the nutrition-based count (Count I) due to double-jeopardy concerns. The court did not enter judgment of conviction on the medical-care-based count (Count II). Washington was ultimately sentenced to 24 years in prison.

## Discussion and Decision

[12] Washington appeals his conviction, challenging the sufficiency of the evidence to prove he committed neglect of a dependent resulting in death by failing to provide I.W. with adequate nutrition. When reviewing the sufficiency of evidence to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[13] In pertinent part, Indiana's neglect statute states: "A person having the care of a dependent . . . who knowingly or intentionally . . . places the dependent in a situation that endangers the dependent's life or health . . . commits neglect of a dependent, a Level 6 felony." Ind. Code § 35-46-1-4 (a)(1). "However, the offense is . . . a Level 1 felony if it is committed . . . by a person at least eighteen

(18) years of age and results in the death or catastrophic injury of a dependent who is less than fourteen (14) years of age." Ind. Code § 35-46-1-4 (b)(3).

[14] At all relevant times, Washington was at least 18 years old, and I.W. was less than 14 years old. Therefore, to convict Washington of Level 1 felony neglect of a dependent resulting in death, as alleged in the nutrition-based count, the State had to prove that he knowingly or intentionally failed to provide I.W. with adequate nutrition and that this failure resulted in I.W.'s death. Ind. Code § 35-46-1-4(a)(1), (b)(3). Washington does not dispute that he knowingly failed to provide I.W. with adequate nutrition. He only challenges the evidence that his failure to do so resulted in I.W.'s death.

[15] Our Supreme Court has recognized: "An enhancing event that 'results' from a criminal act implicates proximate causation, which 'requires that the injury would not have occurred but for the defendant's conduct.'" *Fix v. State*, 186 N.E.3d 1134, 1142 (Ind. 2022) (quoting *Patel v. State*, 60 N.E.3d 1041, 1052 (Ind. Ct. App. 2016)). This Court has also reversed a parent's conviction for Class A felony neglect of a dependent resulting in death due to insufficient evidence of such "but for" causation. *Patel*, 60 N.E.3d at 1052, 1062.

[16] In *Patel*, a mother gave birth to a premature baby boy while attempting to self-abort her late term pregnancy. *Id.* at 1046. Rather than take the baby to a hospital, the mother left him in a dumpster, where he was later found dead. *Id.* The mother was charged with and convicted of Class A felony neglect of a dependent resulting in death based on her failure to seek medical care for the

baby. *Id.* at 1048. At trial, however, doctors could not testify with any certainty that medical care would have saved the baby's life. *Id.* at 1054. They opined only that:

- a postmortem examination of the baby revealed "no abnormalities or problems";

- "the baby's lungs were sufficiently developed to be capable of respiration";

- "a baby of twenty-four weeks gestation [has] a better chance of survival with medical intervention"; and

- "it was absolutely possible that the baby could have survived even though not born in a hospital."

*Id.* 1053-54 (internal quotation marks omitted). We found the doctors' testimony established "only a *possibility* that [the] baby would not have died but for [the mother's] failure to provide medical care immediately after its birth." *Id.* at 1054 (emphasis added). We therefore reversed the mother's conviction for Class A felony neglect of a dependent resulting in death and remanded to the trial court with instructions to enter judgment of conviction for Class D felony neglect of a dependent.

[17] Similar to the uncertainty surrounding the cause of the baby's death in *Patel*, the evidence here established merely the possibility that I.W. would not have died but for her malnutrition. Neither Dr. Paul nor Dr. Thompson could determine I.W.'s cause of death with medical certainty, and the record lacks sufficient evidence from which her cause of death could be reasonably inferred. As Dr.

Paul testified: "[I]f she was malnourished enough to the point where I said this was definitely the cause of death, I would have listed the cause of death as malnutrition." Tr. Vol. II, p. 195.

[18] To be clear, I.W. was severely malnourished. But both Dr. Paul and Dr. Thompson could only say that malnutrition "contributed to" or "play[ed] a factor" in her death. *Id.* at 195, 243. "A 'contributing cause' is 'a factor that— though not the primary cause—plays a part in producing a result.'" *Abney v. State*, 766 N.E.2d 1175, 1178 (Ind. 2002) (quoting Black's Law Dictionary 212 (7th ed. 1999)). But our Supreme Court has ruled this "lesser standard" of causation does not apply to an enhancing event that "results" from a criminal act. *Id.* (reversing conviction for leaving scene of accident resulting in death where jury was instructed to apply contributing cause standard).

[19] We find insufficient evidence to support Washington's conviction for Level 1 felony neglect of a dependent resulting in death based on his failure to provide I.W. with adequate nutrition (Count I). We therefore reverse that conviction and remand for the trial court to enter judgment of conviction against Washington for Level 1 felony neglect of a dependent resulting in death based on his failure to seek medical care for I.W. (Count II). In doing so, we reiterate that the trial court found Washington guilty of the medical-care-based count but did not enter judgment of conviction due to double jeopardy concerns.

[20] Because Washington does not dispute that he knowingly endangered I.W. by failing to provide her with adequate nutrition, he is guilty on Count I of the

lesser included offense of Level 6 felony neglect of a dependent. On remand, we leave it to the trial court to determine whether judgments of conviction on both Count I's lesser-included Level 6 felony and Count II's Level 1 felony would implicate double jeopardy. The court will also need to determine whether resentencing is necessary.

[21] Reversed and remanded with instructions.

Bradford, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana