

FILED

Jul 21 2016, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mikel An Krueger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 21, 2016

Court of Appeals Cause No.
82A01-1509-CR-1392

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D02-1403-FB-361

**Barnes, Judge.**

# Case Summary

Mikel An Krueger appeals her conviction for Class B felony neglect of a dependent. We affirm.

# Issue

Krueger raises one issue, which we restate as whether the evidence is sufficient to sustain her conviction.

# Facts

A.G. was born in March 2011 to Krueger and Kenneth Galloway. Krueger and Galloway were not married, and A.G. lived with Krueger. Galloway and several members of his extended family have been diagnosed with primary pulmonary hypertension, a condition that causes the blood pressure within the arteries that supply the lungs to be elevated. A patient with pulmonary hypertension will become easily fatigued and can have difficulty breathing. They may have "intermittent spells where they look blue." Tr. p. 234. Sudden events, such as fainting or cardiac arrest, are more common as the disease progresses over months or years.

Beginning in May 2011, A.G. began suffering from episodes in which he would suddenly make a choking noise, turn blue, become stiff, and lose consciousness. Krueger was with A.G. during each of the episodes. Dr. Julio Morera, a pediatric cardiologist, treated A.G. in Evansville, but A.G. continued having the episodes. A.G. was lifelined to Riley Hospital for Children in Indianapolis, and he underwent a heart catheterization in July 2011. The heart

catheterization showed that A.G. had mild pulmonary hypertension. A.G. was treated with sildenafil, a medication that alleviates pulmonary hypertension by dilating blood vessels. However, Krueger decided to stop giving the medication to A.G. because she claimed that he was experiencing acid reflux as a side effect. A.G.'s episodes continued, and in June 2012, Dr. Morera placed A.G. on an EKG monitor. The monitor showed A.G.'s heart quicken and then stop for a few seconds. A.G. was again transported to Riley Hospital, and a pacemaker was implanted. Two days after the pacemaker was implanted, A.G. had another episode. Because the doctors were concerned about the functioning of the pacemaker, they performed an exploratory surgery, which did not reveal a mechanical problem with the pacemaker.

[5] A.G. was later referred to Dr. Chris Johnsrude at Kosair Children's Hospital in Louisville. Dr. Johnsrude performed extensive testing on A.G. to determine the cause of the episodes. He determined that A.G.'s pulmonary hypertension was too mild to be causing the episodes. He also determined that the pacemaker was unnecessary. Dr. Johnsrude placed A.G. on continuous EKG monitoring, which revealed no abnormalities. A video EEG was also performed, which also revealed no abnormalities. Krueger asked if A.G. could be removed from the monitoring so that she could give him a bath. While Krueger was alone with A.G. giving him a bath, A.G. had another episode. Dr. Johnsrude was "despondent" that A.G. had an episode without the monitoring equipment being connected. *Id.* at 180. Dr. Johnsrude suggested sending A.G. home with video monitoring equipment to record an episode, but

Krueger refused to permit the video monitoring. At that point, Krueger's mother, Staci Krueger, approached Dr. Johnsrude and expressed suspicion that Krueger was somehow causing A.G.'s episodes.

[6] Dr. Johnsrude explained that A.G.'s episodes could be triggered by an adult in several different ways by pressing on certain locations on A.G.'s body for a few seconds. A.G. was referred to Kosair's pediatric forensic medicine team, which conducts child abuse examinations. Krueger was interviewed by detectives and the Department of Child Services ("DCS"). DCS took custody of A.G. and placed him with Galloway.[1] Krueger was allowed supervised visitations. Grant Wargel supervised a visitation on September 26, 2012. The visit was videotaped. At one point during the visit, Krueger looked directly at the video camera. A few minutes later, she moved to a location on a couch that was in one of the camera's blind spots. Wargel was taking notes and was not watching Krueger, and Krueger said, "Grant I think he's having a spell. I didn't do it." Tr. p. 256. A.G. was stiff and unconscious.

[7] DCS referred Krueger to Dr. Susanne Blix, who diagnosed Krueger with factitious disorder by proxy, which was formerly known as Munchausen Syndrome by Proxy. Factitious disorder by proxy involves a caretaker

---

[1] Krueger appealed the determination that A.G. and her other child were children in need of services. We affirmed the trial court's determination. *See In re A.G.*, 6 N.E.3d 952 (Ind. Ct. App. 2014).

exaggerating or causing medical symptoms in a dependent to gain attention, validation, or some other perceived benefit.

[8] The State charged Krueger with Class B felony aggravated battery, Class B felony battery resulting in serious bodily injury to a person less than fourteen years of age, and Class B felony neglect of a dependent resulting in serious bodily injury. A jury trial was held in July 2015. The jury found Krueger guilty of Class B felony neglect of a dependent but not guilty of the other charges. The trial court sentenced Krueger to ten years with eight years executed in the Department of Correction, one year on work release, and one year on probation.

## Analysis

[9] Krueger argues that the evidence is insufficient to sustain her conviction for neglect of a dependent. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[10] At the time of Krueger's offense, Indiana Code Section 35-46-1-4 governed the offense of neglect of a dependent and provided: "A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who

knowingly or intentionally: (1) places the dependent in a situation that endangers the dependent's life or health . . . commits neglect of a dependent." Ind. Code § 35-46-1-4(a). The offense was a Class B felony if it resulted in serious bodily injury. I.C. § 35-46-1-4(b)(2).

[11] Krueger argues that the evidence is insufficient to sustain her conviction because the case against her was based on "sheer conjecture and surmise." Appellant's Br. p. 17. According to Krueger, the State failed to present sufficient evidence that a crime was even committed. Krueger points out that, contrary to Dr. Johnsrude's testimony, Dr. Morera testified that A.G.'s episodes were consistent with primary pulmonary hypertension. She also points out that no one saw Krueger inflict harm on A.G. or touch him inappropriately. Krueger's ex-boyfriend, Christopher Crowe, testified that he was present during one of the episodes and that Krueger was driving when the episode started. Further, even after A.G. was removed from Krueger's care, he allegedly had another three episodes while in the care of Krueger's mother, Staci. Contrary to Dr. Blix's testimony, two other psychologists found no indication that Krueger had factitious disorder by proxy. Krueger contends that her argument is not an invitation to reweigh the evidence; rather, she contends a conviction may not stand on mere speculation.

[12] The State argues that Krueger does, in fact, request that this court reweigh the evidence. We agree. A.G. was diagnosed with mild primary pulmonary hypertension based on extensive testing, and Dr. Johnsrude testified that A.G.'s episodes were not consistent with that diagnosis. None of the treatments were

effective in stopping the episodes. Dr. Johnsrude and his team of physicians examined and ruled out every reasonable medical cause for the episodes. After A.G. was removed from Krueger's care in September 2012, he lived with Galloway and Galloway's family and then with Galloway and his girlfriend. Galloway and his mother testified that, since being removed from Krueger, A.G. had not had any episodes where he turned blue and lost consciousness. Although Krueger's mother and grandfather testified regarding three incidents while A.G. was in their care, the State points out that the jury was entitled to find them biased.

[13] We acknowledge that there were differing expert opinions presented here and that some witness testimony conflicted with other witness testimony. However, resolving those conflicts was the jury's responsibility. On appeal, we cannot reweigh the evidence or judge the credibility of the witnesses. *Bailey*, 907 N.E.2d at 1005. We conclude that the State presented sufficient evidence to show that Krueger knowingly or intentionally placed A.G. in a situation that endangered his life or health and resulted in serious bodily injury.

## Conclusion

[14] The evidence is sufficient to sustain Krueger's conviction for Class B felony neglect of a dependent. We affirm.

[15] Affirmed.

Vaidik, C.J., and Mathias, J., concur.