## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2017, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Valerie K. Boots
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eric Ramon Davilla-Castro,[1]

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 30, 2017

Court of Appeals Case No.
49A02-1706-CR-1292

Appeal from the
Marion Superior Court

The Honorable
Angela Dow Davis, Judge

The Honorable
Peggy R. Hart, Magistrate

Trial Court Cause No.
49G16-1609-F6-36976

---

[1] We note that, although defendant's name is spelled Davilla-Castro throughout the record, at trial, the defendant spelled his name as Davila-Castro, *i.e.*, Davila was spelled with one "l." *Tr. Vol. II* at 42.

**Kirsch, Judge.**

[1] Eric Ramon Davilla-Castro ("Davilla-Castro") appeals his conviction of Level 6 felony criminal recklessness,[2] claiming that his conviction was not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] The facts most favorable to the judgment follow. On September 17, 2016, Diana Pizarro[3] ("Pizarro") and her fiancé, Ulises Grande ("Grande"), were caring for Grande's three children from his previous relationship with Alejandra Tellez ("Tellez"). Around 3:00 a.m., the youngest child, still a baby, was crying. This prompted Pizzaro and Grande to ask Tellez, who was living with Davilla-Castro, if they could bring the baby to her. Tellez agreed.

[4] When Pizarro and Grande arrived at Tellez's apartment, they saw Tellez running into the street. Tellez was crying and said that she was hurt and that Davilla-Castro had been strangling her. Pizarro, Grande, and Tellez decided to go into the apartment. In the hallway, they found Davilla-Castro, who was "very mad" and screaming. *Tr. Vol. II* at 15. Davilla-Castro threatened to fight Grande, took off his belt, and approached Grande while wrapping the belt

---

[2] *See* Ind. Code § 35-42-2-2(b).

[3] In the record before us, Diana Pizarro is also referred to as Diana Ticarro; however, we will use only Pizarro. *Tr. Vol. II* at 4, 34, 40, 56, 57, 59.

around his right hand. *Id*. at 15, 25. Based on Davilla-Castro's aggression, Grande told Pizarro and Tellez to leave. Tellez called the police.

[5] Soon thereafter, Pizarro, who was concerned for Grande's safety, went back into the apartment and found Davilla-Castro and Grande fighting. As she entered, Pizarro saw Davilla-Castro with a knife in his right hand, and Grande holding Davilla-Castro by the wrists. Grande told Pizarro to take the knife from Davilla-Castro, which she did, and in the process cut Davilla-Castro's hand. Pizarro said that she "was very scared" at that moment because Davilla-Castro was trying to "stab" Grande. *Id.* at 17. Pizarro was concerned for Grande's life. *Id*. To prevent Davilla-Castro from grabbing another knife, Pizarro put the knife she had taken from Davilla-Castro, as well as all the other household knives, into her vehicle.

[6] Indianapolis Metropolitan Police Officer Mitchell Farnsley ("Officer Farnsley") responded to the call of a domestic disturbance. There, he found four individuals in the apartment and separated them for later interview. Encountering Davilla-Castro, Officer Farnsley noted that he was agitated with Grande. Davilla-Castro appeared heavily intoxicated and had a bleeding cut on his hand. It was Officer Farnsley's opinion that Davilla-Castro had sustained that injury "during the struggle with the knife being taken away from him." *Id*. at 37. Talking with Grande, Officer Farnsley noted that Grande was "a little relieved," "exhausted," "sweaty," and "a little nervous." *Id.* at 31-32. Grande had "fresh cuts" on his face that were bleeding. *Id*. at 32. Officer Farnsley

testified that he arrested Davilla-Castro for criminal recklessness based on his conduct involving the knife. *Id*. at 38.

[7]  In September 2016, the State charged Davilla-Castro with Level 6 felony criminal recklessness.[4] At the March 2017 bench trial, Pizarro and Officer Farnsley testified for the State, and Davilla-Castro testified in his defense, saying that he had not held the knife. Instead, he said that he had only touched the blade when he tried to remove the knife from Grande, and that is when he cut his hand. *Tr. Vol. II* at 53, 54. The trial court found Davilla-Castro guilty as charged and sentenced him to 365 days with ten days executed in jail and the rest suspended to probation. Davilla-Castro now appeals.

## Discussion and Decision

[8]  Indiana Code section 35-42-2-2 provides, "A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness," a Class B misdemeanor. However, the offense is a Level 6 felony if "it is committed while armed with a deadly weapon." Ind. Code § 35-42-2-2(b). Davilla-Castro's sole claim on appeal is that the evidence was insufficient to support his conviction of Level 6 felony criminal recklessness.

---

[4] The State also charged Davilla-Castro with Level 6 felony criminal confinement, Level 6 felony strangulation, Class A misdemeanor battery resulting in bodily injury, and Class A misdemeanor domestic battery; however, those charges were dismissed at the commencement of the bench trial. *Tr. Vol. II* at 7-8, 19-20.

[9] Sufficiency of evidence claims "face a steep standard of review." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). When reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). Instead, "we look to the evidence and reasonable inferences drawn therefrom that support the [judgment] and will affirm the conviction if there is probative evidence from which a reasonable [fact-finder] could have found the defendant guilty beyond a reasonable doubt." *Id.* A conviction may be sustained on appeal on the uncorroborated testimony of a single witness or victim. *Lay v. State*, 933 N.E.2d 38, 42 (Ind. Ct. App. 2010), *trans. denied*. Moreover, a conviction may be sustained on circumstantial evidence alone so long as the circumstantial evidence supports a reasonable inference of guilt. *Gonzalez v. State*, 908 N.E.2d 338, 340 (Ind. Ct. App. 2009).

[10] Davilla-Castro's charging information provided, in relevant part, as follows:

> On or about September 17, 2016, [Davilla-Castro] did recklessly, with a deadly weapon, to wit: a knife, perform[] an act, that is: walking at and toward the person of Ulises Grande and/or Diana [Pizarro] with a knife, that created a substantial risk of bodily injury to Ulises Grande and/or Diana [Pizarro].

*Appellant's App. Vol. II* at 19. Thus, to convict Davilla-Castro of Level 6 felony criminal recklessness, the State had to prove beyond a reasonable doubt that (1) he (2) recklessly, (3) with a knife, (4) walked at or toward the person of Grande or Pizarro, (5) thereby, creating a substantial risk of bodily injury to either

Grande or Pizarro. Davilla-Castro focuses on the fourth element,[5] contending that his conviction cannot stand because there was no direct evidence to support the element that he walked at or toward Grande or Pizarro with a knife, and the circumstantial evidence does not support a reasonable inference of such. *Appellant's Br.* at 8-10 We disagree.

[11] Here, the State presented evidence that Grande and Pizarro were at Davilla-Castro's apartment to drop off Tellez's baby and were met outside by Tellez crying and saying that Davilla-Castro had hurt her. *Tr. Vol. II* at 10, 11. Pizarro, Grande, and Tellez all entered the apartment and found Davilla-Castro very mad and screaming. *Id*. at 15. Davilla-Castro took off his belt and wrapped it around his wrist as he approached Grande and threatened to fight him. *Id*. Due to Davilla-Castro's aggressive actions, Pizarro and Tellez left the apartment. *Id*. Pizarro, concerned for Grande's safety, returned to the apartment and saw Davilla-Castro and Grande fighting. *Id*. at 16. Davilla-Castro had a knife in his right hand, and Grande was holding onto Davilla-Castro's wrists. *Id*. at 16, 26. Pizarro said that she "was very scared" at that moment because Davilla-Castro was trying to "stab" Grande. *Id.* at 17. Pizarro was concerned for Grande's life. *Id*. At Grande's instruction, Pizarro took the knife out of Davilla-Castro's hand, and in the struggle, Davilla-Castro

---

[5] To the extent Davilla-Castro argues that he did not have a knife, we are unpersuaded. Pizarro testified at trial that Davilla-Castro held a knife. While Davilla-Castro testified at trial that he never held a knife, his possession of a knife was a question of fact, which the trial court decided in favor of the State. We cannot reweigh that evidence. *Krueger v. State*, 56 N.E.3d 1240, 1244 (Ind. Ct. App. 2016), *trans. denied*.

cut his hand. *Id.* at 17, 18. Responding to the 911 call, Officer Farnsley noted that Davilla-Castro was agitated with Grande. *Id.* at 32. It was Officer Farnsley's opinion that Davilla-Castro sustained the cut on his hand "during the struggle with the knife being taken away from him." *Id.* at 37. Grande appeared exhausted, sweaty, and a little nervous and relieved. *Id.* at 31-32. Officer Farnsley noted that Grande had fresh cuts on his face that were bleeding. *Id.* at 32. From this evidence, the finder of fact court could have made a reasonable inference that Davilla-Castro, agitated with Grande, approached him with a knife in order to engage him in a fight and to attempt to stab him, thereby creating a substantial risk of bodily injury.

[12] Davilla-Castro contends that the trial court drew an unreasonable inference from the above facts. He argues that the evidence showed only that: Davilla-Castro and Grande were involved in "a mutual fight"; Pizarro did not see how Grande's injuries occurred; "Grande's minor injuries to his head were not stab wounds, but appear more characteristic of a fist fight"; and the laceration Davilla-Castro sustained to the webbing between his thumb and index finger is consistent with his attempting to grab the blade of the knife as it was being held by someone else. *Appellant's Br.* at 11. Davilla-Castro's alternative version of the facts is an invitation for us to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Krueger v. State*, 56 N.E.3d 1240, 1244 (Ind. Ct. App. 2016), *trans. denied*. Accordingly, we conclude that the State presented sufficient evidence to support Davilla-Castro's conviction for Level 6 felony criminal recklessness.

[13]    Affirmed.

[14]    Najam, J., and Brown, J., concur.