## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2017, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Franklin Dent,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 12, 2017<br><br>Court of Appeals Case No.<br>02A05-1707-CR-1615<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Frances C. Gull, Judge<br><br>Trial Court Cause No.<br>02D04-1509-MR-7 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Franklin Dent (Dent), appeals his conviction for murder, a felony, Ind. Code § 35-42-1-1; altering the scene of death of a person, a Level 6 felony, I.C.§ 36-2-14-17(b), and his adjudication as a habitual offender.

We affirm.

# ISSUE

Dent presents one issue on appeal, which we restate as the following: Whether the State presented sufficient evidence beyond a reasonable doubt to support Dent's convictions.

# FACTS AND PROCEDURAL HISTORY

Sometime in October of 2014, Roger Ryson (Ryson) introduced his cousin, Jessica Fecht (Fecht), to Dent. Shortly thereafter, Fecht and Dent began dating. At the time, Fecht lived with her parents in Wisconsin, but on December 31, 2014, she moved to Fort Wayne, Indiana. Fecht temporarily lived with Ryson, then on January 8, 2015, she moved into Dent's rented home at 1519 Sherman Boulevard, Fort Wayne, Indiana. Prior to moving to Indiana, Fecht maintained regular contact with her mother. However, after she moved in with Dent, Fecht's contact with her family diminished significantly.

On January 13, 2015, five days after Fecht had moved in with Dent, Dent visited the home of his sister, Jeana Potts (Jeana), and brother-in-law, Brian Potts (Brian). While there, Dent asked Brian if he could drop him off at a train

station to travel to Mexico. Brian calculated how much it would cost Dent for his travels, however, Dent did not have enough money. Dent articulated to Brian that he "would sell all his weed" to fund his travel expenses. (Transcript Vol. III, p. 46). Dent grew marijuana inside his house. Between January 13 and January 16, 2015, Dent stayed at Jeana's and Brian's house, and Brian noted Dent's efforts in trying to sell his "weed." (Tr. Vol. III, p. 46).

[6]     Instead of dropping off Dent at a train station as originally planned, Brian decided that he would drive Dent to Mexico. According to Brian, he had just found out where Jeana's and Dent's father was living in Mexico, and because Jeana had not seen her father in "30 something years," he thought it would be an "awesome opportunity" for Jeana. (Tr. Vol. III, p. 47). On January 16, 2015, Jeana, Brian, and Dent drove to Mexico. Using the money that he had earned from selling his "weed," Dent covered all costs associated with the travel. (Tr. Vol. III, p. 46). On their way to Mexico, the three only stopped for gas and food, but otherwise drove "straight through." (Tr. Vol. III, p. 48). It took the trio about twenty-four hours to get to Mexico. Dent did not have a passport, and he had expressed to Jeana that he intended to live indefinitely in Mexico. Notwithstanding his claim, Dent later obtained a six-month visa for his stay in Mexico. Conversely, Brian and Jeana stayed in Mexico for about "three hours tops," and the pair returned to Indiana on the evening of January 18, 2015. The next day, while cleaning out the car, Jeana discovered Dent's cell phone. Upon scrolling through Dent's phone, Jeana saw several text messages that were "sexual in nature" from "a girl named Jess." (Tr. Vol. III,

p. 28). In one of those messages, "[Jess] was upset that [Dent] hadn't" visited her, and Dent responded, "[D]o you want me to come tie you up?" (Tr. Vol. III, p. 28). Startled by the messages, Jeana "erased [the phone] back to factory settings," and gave it to her son who needed a cell phone. (Tr. Vol. III, p. 28). Jeana also found a "shovel" along with "weed clippings" in the trash can, which she believed belonged to Dent. (Tr. Vol. III, p. 29).

[7] On January 19, 2015, Jeana's and Dent's mother saw a Facebook post that featured Fecht's and Dent's picture. The post indicated that Fecht had gone missing and the last person seen with her was Dent. Jeana's and Dent's mother spoke with Jeana, and Jeana stated that she had seen a "girl's number" in Dent's phone saved "under Jess and not Jessica," and she presumed it was Fecht. (Tr. Vol. III, p. 30). Jeana told her mother that she and Brian drove Dent to Mexico and Fecht was not part of their traveling team. Believing that Dent was not involved in Fecht's disappearance, Jeana and Brian went to the Fort Wayne Police Department (FWPD) to clarify that they had both driven Dent to Mexico, Fecht did not accompany them; therefore, Dent was not involved in Fecht's disappearance. Later that day, Jeana called Dent and inquired about Fecht, but Dent denied knowing Fecht.

[8] Around this time, Fecht's family in Wisconsin began to worry about Fecht's lack of communication. The last time Fecht's mother spoke to Fecht was on January 8, 2015. On January 17, 2015, Ryson, Fecht's cousin, went to Dent's home to see if he could make contact with Fecht. Nobody was home and neither Dent's nor Fecht's vehicle was parked outside Dent's home. Based on

Ryson's report, the next day, on January 18, 2015, Fecht's mother called the FWPD and requested that an officer conduct a welfare check on her daughter. Officer Scott Wilson (Officer Wilson) went to Dent's home, but no one came to the door. Upon peering through one window that did not have blinds, Officer Wilson observed trash sprawling throughout the house and it appeared uninhabitable. After the visit, Officer Wilson contacted Fecht's mother and reported that he was unable to locate Fecht at Dent's home. The next day, Officer Wilson conducted a second welfare check on Fecht at Dent's home. This time, Officer Wilson checked the mail to see if there was anything addressed to Fecht, but he could not trace anything relevant to Fecht. Again, Officer Wilson reported his findings to Fecht's mother and he suggested that she file a missing person's report.

[9] At 8:48 a.m. on January 20, 2015, Fecht's father filed a missing person's report with his local police department in Portage, Wisconsin. An equivalent missing person's report was filed with the FWPD at approximately 9:30 a.m. on the same day. In the reports, Fecht's last known address was Dent's Fort Wayne home address. The FWPD assigned the case to Detective Dale Wilson (Detective Dale). During his investigation, Detective Dale learned from Brian that Dent was in Mexico and Dent had no intention of returning to the United States for at least six months. Detective Dale also contacted Mark Ludwig (Ludwig), the property manager for Dent's rented home, and informed him that Dent was in Mexico for at least six months. Concerned that one of his properties may have been possibly abandoned, Ludwig agreed to meet with

Detective Dale at Dent's home on January 27, 2015. After Ludwig had signed a consent form for Detective Dale to gain entry to Dent's home, Ludwig attempted to open the door, but the locks had been changed. Eventually, Detective Dale accessed the home through one of the windows. There was an endless amount of trash throughout the first floor. On the second floor, one bedroom had a mattress, a television, clothes on the floor—including women's clothing, and a medicine bottle with Fecht's name. In other bedrooms on the second floor, there were multiple potted marijuana plants and it appeared to Detective Dale that Dent had an active "marijuana-grow operation." (Tr. Vol. III, p. 163). To grow the marijuana, Dent had rewired the entire second floor, and Ludwig expressed that it "look[ed] like it took a lot of work." (Tr. Vol. III, 177). Ludwig and Detective Dale discovered more trash and marijuana in the basement. Based on the discovery of marijuana, Detective Dale contacted the FWPD Narcotics Department and the case transformed into a narcotics investigation.

[10] After the Narcotics Department had completed their investigation, they allowed Ludwig to re-enter Dent's house. On February 5, 2015, Ludwig hired Bruce Brooks (Brooks) and two other people to clean Dent's home. Brooks oversaw the cleaning of the basement, and the other two cleaned the first and second floors. First, Brooks cleared all the trash and debris from the basement rooms. Brook next swept the floor but in the process, he noticed a pile of dirt about two to three inches above the concrete floor. Brooks conveyed that information to Ludwig, and Ludwig contacted the police. Officer Robert Wilcox (Officer

Wilcox) was dispatched to Dent's home to conduct a follow-up investigation on the pile of dirt located in the basement. Officer Wilcox used a shovel to dig out the dirt and "observed a knee of a white . . . human." (Tr. Vol. II, p. 190). "At that point, tools were no longer an option" so Officer Wilcox started scooping the dirt with his hands to avoid "additional damage to the body." (Tr. Vol. II p. 190). Officer Wilcox discovered several cigarette butts at various levels in the hole which were collected for DNA testing. At that point, Officer Wilcox notified the coroner's office, and a coroner extracted the body from the hole. The victim was identified as Fecht and she was found lying on her back with her legs folded up to her chest. Fecht was dressed in a French maid lingerie costume, and she had a plaid scarf that was wrapped around her neck. After several crime scene photographs were taken, Fecht's body was subsequently transported to the Northeast Indiana Forensic Center.

[11] On February 6, 2015, a pathologist conducted Fecht's autopsy. The pathologist observed several abrasions around Fecht's neck which he believed had been caused by the scarf found on her neck. Fecht's face was swollen, and there was bruising around her left eye, nose, mouth, and right breast. The pathologist concluded that Fecht died as a result of asphyxia due to strangulation and suffocation. The pathologist noted that it was not uncommon for asphyxia victims to have injuries around the mouth and nose. Also, a forensic biologist with the Indiana State Police Regional Laboratory submitted several items recovered from the crime scene for DNA testing. Dent's DNA was detected in the vaginal swabs taken from Fecht, and under Fecht's left-hand fingernail.

Furthermore, Dent's DNA was identified on at least three cigarette butts found in the hole where Fecht had been buried.

[12] Further investigation revealed that Dent had disclosed to Jeana, Brian, and several others that he had fantasies of killing a "female and hav[ing] sex with her dead body." (Tr. Vol. III, p. 72). Dent also divulged to Brian that he was into "ball gags" during sex. (Tr. Vol. III, p. 53). Dent's phone records showed that between December 1, 2014, and January 13, 2015, there were approximately 623 text messages between Dent and Fecht. Dent's last communication with Fecht was on January 18, 2015. Despite conveying to Jeana that he planned on staying in Mexico forever in April of 2015, Dent returned to Indiana. Dent then contacted Ryson, and Dent questioned Roger if he had seen or heard from Fecht. Ryson responded, "No. Not since January." (Tr. Vol. III, p. 64). Dent, in turn, stated that he had not heard from Fecht since December of 2014.

[13] On September 18, 2015, the State filed an Information, charging Dent with Count I, murder, a felony, I.C. § 35-42-1-1(1); and Count II, altering the scene of death of a person, a Level 6 felony, I.C. § 36-2-14-17(b). On October 5, 2015, the State added a habitual offender Count. A bifurcated jury trial was conducted on May 23 through May 25, 2017. During the first phase of Dent's trial, the jury heard evidence with respect to Dent's charges of murder and altering the scene of death. The State's case against Dent was largely circumstantial, and it included the following evidence: Fecht moved from Wisconsin to live with Dent in his Fort Wayne home; Fecht's family members

knew that Fecht was living with Dent; a medicine bottle with Fecht's name along with women's clothing was located in Dent's home; Dent had confessed to others that he had fantasies involving him killing a woman and having sex with the corpse; the cigarette butts found in the hole where Fecht was buried contained Dent's DNA; Dent's DNA was also found in Fecht's vagina and under her left hand fingernail; and Dent attempted to move from Indiana to Mexico. The jury returned a guilty verdict. In the second phase, the jury found Dent to be a habitual offender. At the sentencing hearing held on June 22, 2017, the trial court ordered Dent to execute a sixty-five-year sentence for his murder conviction, and enhanced that sentence by twenty years based on Dent's habitual offender Count. The trial court also sentenced Dent to a consecutive sentence of two and one-half years for his Level 6 felony altering the scene of death of a person.

[14] Dent now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[15] Dent claims that the evidence is insufficient to sustain his conviction for murder and altering the scene of death. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[16]     Indiana Code section 35-42-1-1(1) provides that "[a] person who: (1) knowingly or intentionally kills another human being . . . commits murder, a felony." A person engages in conduct knowingly when, at the time he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2(b). A murder conviction may be sustained on circumstantial evidence alone. *Sallee v. State*, 51 N.E.3d 130, 134 (Ind. 2016). Likewise, a trier of fact may infer that the requisite intent for a crime exists based solely on circumstantial evidence: "Knowledge and intent are both mental states and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite knowledge or intent to commit the offense in question." *Stokes v. State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010).

[17]     Dent first contends that his trip to Mexico was not an admission of guilt; rather, he claims that the tour was a "demonstration of family loyalty and [an] attempt" for Jeana and him "to reunite with their father" whom they had not seen in thirty years. (Appellant's Br. p. 16). Dent also argues that he voluntarily returned to the United States in April of 2015, without any coercion from law enforcement authorities. Contrary to Dent's arguments, our supreme court has determined that "[e]vidence of flight may be considered as circumstantial evidence of consciousness of guilt." *See Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015).

[18]     In a twenty-four-hour drive to Mexico, Dent did not mention that he was dating Fecht, and he requested Jeana not to disclose that he was indefinitely staying in

Mexico. Jeana learned that Dent had been seeing Fecht after returning to Indiana when she saw Dent's text to Fecht asking her if she wanted him to tie her up. The Facebook post with both Dent's and Fecht's picture declaring Fecht missing led Jeana to believe that the "girl's number" in Dent's phone saved "under Jess" was Fecht. (Tr. Vol. III, p. 30). After Jeana saw the Facebook post, she called Dent and asked if he knew Fecht; however, Dent denied knowing Fecht. At Dent's trial, Ryson testified that he found it rather odd that after Dent returned to Indiana from Mexico, Dent stated that he had not seen Fecht since December of 2014; yet, Fecht had moved in with Dent in January of 2015. In addition, a FWPD officer who was involved in the investigation testified that based on his experience, it was common to see people who have committed crimes return to their homes because that is where their "roots are. . ., their family, and [they] generally run out of money or places to stay." (Tr. Vol. III, p. 104). Taking all the above into consideration, it is clear that Dent fled to Mexico in an effort to escape prosecution and hinder the investigations leading into Fecht's disappearance and murder.

[19] Dent then postulates that "any person burying the body could have intentionally or accidentally placed [Dent's] brand of cigarette butts into the grave site. It was not a reasonable inference for the jury to assume that those cigarette butts were smoked . . . [while] excavating the grave site." (Appellant's Br. p. 17). Additionally, he contends that it would be unreasonable to draw an inference that the presence of his DNA on Fecht's vaginal speculum and under Fecht's left-hand fingernail was deposited at the time of the murder. Dent

argues that the only reasonable inference that the jury could have drawn was that Fecht's death was an accident because he was into "kinky types of sex such as ball gags." (Appellant's Br. p. 18). Dent's arguments are a request for this court to usurp the province of the jury and reweigh the evidence, which it will not do. *See Bailey*, 907 N.E.2d at 1005.

[20] As noted, Dent disclosed several disconcerting statements to Brian, Jeana, and others that he fancied the idea of killing and having sex with a woman's corpse. When Fecht was extracted from the hole in Dent's basment, she had a French maid lingerie costume, there was a scarf wrapped around her neck, there were bruises around her nose and mouth (which a pathologist testified at Dent's trial were consistent with a person applying pressure on the mouth and nose of a victim in order to suffocate and hasten a victim's death), and Dent's DNA was inside Fecht's vagina and under Fecht's left-hand fingernail. Most significant is that Fecht's body was discovered buried in the basement of Dent's home shortly after Fecht had moved in with him. Additionally, shortly after arriving home from Mexico, Brian and Jeana found a shovel in their home which they believed was Dent's. That shovel could have possibly been used to bury Fecht. The mentioned evidence does not show that Fecht's death was the result of 'kinky sex' that had an unfortunate ending, rather, Dent lived his fantasy. Dent brutally murdered Fecht by tightly wrapping a scarf around Fecht's neck and strangling her. Here, we conclude that there was sufficient circumstantial evidence to support Dent's murder conviction.

Lastly, Dent contends that his conviction for Level 6 felony altering the scene of death is unsupported by the evidence. To convict Dent of altering the scene of a death, the State was required to prove beyond a reasonable doubt that: (1) Dent (2) with the intent to hinder a criminal investigation (3) and without the permission of the coroner or a law enforcement officer (4) knowingly or intentionally (5) altered (6) Fecht's scene of death (7) after Fecht died from violence and/or in an apparently suspicious, unusual, or unnatural manner. I.C. § 36-2-14-17. The record reveals that Fecht died of asphyxia due to strangulation and suffocation. Dent then dug a hole in his basement and buried Fecht. Officer Wilcox, who recovered Fecht's body in the basement stated that Fecht's legs "had been folded up onto her chest and her feet were actually crossed and pointing straight downwards, so she was folded up and inside this hole." (Tr. Vol. III, p. 193). In light of the foregoing, we hold that there was sufficient evidence to support Dent's conviction for altering the scene of death.

## CONCLUSION

Based on the above, we conclude that there was sufficient evidence beyond a reasonable doubt to sustain Dent's conviction for murder and altering the scene of death.

Affirmed.

Baker, J. and Brown, J. concur