## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 04 2018, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andre Laughlin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 4, 2018

Court of Appeals Case No.
18A-CR-1139

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

Trial Court Cause No.
49G04-1701-F3-2397

**Crone, Judge.**

## Case Summary

Andre Laughlin appeals his convictions for level 3 felony possession of a narcotic drug and level 5 felony possession of cocaine, both of which were enhanced to a higher felony level because he was in possession of a firearm at the time of the offenses. He asserts that there was insufficient evidence that he possessed illegal drugs and a firearm. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

Around 4:00 p.m. on January 14, 2017, Michael Parker was in his apartment on Rybolt Avenue when he heard four to five gunshots coming from the adjacent building. He looked out his window and saw several people running from the building including a man, later identified as Reginald Little, wearing only his underwear and yelling for someone to call 911. Little collapsed on the ground. While Parker was calling 911, he saw another man run out of the adjacent building wearing a gray sweatshirt and jeans and holding a black handgun. Parker later identified this man as Laughlin. Parker saw Laughlin get in a red pickup truck and drive over to where Little had fallen. Parker then observed Laughlin get out of the truck and stand there a moment holding the black handgun before getting back in the truck and driving away.

Police officers arrived at the scene and found Little lying on the ground covered in blood. Paramedics arrived and transferred Little to a hospital. Officers learned which apartment Little had been in and recovered three .40 caliber shell

casings from the apartment and found blood spattered on the bed in the back bedroom.

[4] Meanwhile, IMPD Officer Craig Solomon saw a red pickup truck driving east on 25th Street that matched the description of the truck seen leaving Rybolt Avenue. Officer Solomon began following the truck, which turned sharply onto Franklin Place without adequately signaling, drove rapidly south, and turned west onto 24th Street, again without adequately signaling. At the intersection with Bursdal Parkway, the truck stopped behind another vehicle, then whipped out from behind it, nearly sideswiping it. The truck failed to stop at the stop sign and turned onto Bursdal Parkway. Officer Solomon initiated a traffic stop, and the truck pulled over on the shoulder of Bursdal Parkway.

[5] Officer Solomon approached the driver's side window, and Laughlin handed him his driver's license. Officer Solomon observed that Laughlin was very nervous, his movements were "'jerky," and he was speaking rapidly. Tr. Vol. 2 at 85. Officer Solomon returned to his car to check Laughlin's information. As he was doing so, he received an updated description of the man with a gun who was seen leaving Rybolt Avenue and concluded that Laughlin fit the description. Officer Solomon returned to the truck and asked Laughlin to exit the vehicle. After handcuffing Laughlin, Officer Solomon found a black .40 caliber semiautomatic handgun lying on the curb outside the opened passenger-side window of Laughlin's truck. State's Ex. 15. Officer Solomon discovered that the chamber contained a .40 caliber bullet.

[6] At the time of Laughlin's arrest, police set up a perimeter around the area. No foot traffic was permitted in or around the site of the stop. Laughlin was detained for approximately two hours before being transported to police headquarters, where he was placed in restraints inside an interview room. The interview room was located off a narrow, but well-lit, hallway that led from the main office to a dead end. Detective Patrick Scroggins was investigating the Rybolt Avenue shooting and spoke with Laughlin in the interview room. Detective Scroggins had walked in the hallway three or four times earlier and had not seen anyone in the hallway or anything on the floor. Laughlin asked Detective Scroggins if he could use the restroom. Detective Scroggins walked down the hallway to the main office to ask Officer Solomon for assistance, and both officers returned to Laughlin's interview room. Neither officer saw any other person in the hallway or anything on the floor. Detective Scroggins removed Laughlin from the restraints, and the officers escorted Laughlin back toward the main office where the restroom was located, single file, with Officer Solomon leading and Detective Scroggins behind Laughlin.

[7] As they walked down the hallway, both officers heard a soft sound, like an object hitting the floor. Detective Scroggins saw something out of the corner of his eye, looked down, and saw a clear bag containing white powdery substances on the floor within inches of Laughlin's left foot. Officer Solomon turned around and saw the bag on the floor. Detective Scroggins quietly picked up the bag, seemingly without Laughlin's knowledge. While Laughlin used the restroom, Detective Scroggins gave the bag to Officer Solomon. The officers

escorted Laughlin back to the interview room, and Officer Solomon placed the bag into an evidence envelope. Subsequent lab testing revealed that the white powdery substances in the bag were 1.6690 grams of cocaine and 12.2131 grams of fentanyl.

[8] The State charged Laughlin with Count I, level 3 felony possession of a narcotic drug; Count II, level 5 felony possession of cocaine; and Count III, level 5 felony battery by means of a deadly weapon. Appellant's App. Vol. 2 at 142. A jury found him guilty of Counts I and II and not guilty of Count III. The trial court sentenced Laughlin to an aggregate term of nine years, with six years suspended. This appeal ensued.

## Discussion and Decision

[9] Laughlin challenges the sufficiency of the evidence supporting his convictions. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the verdict and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id.*

[10] To convict Laughlin of level 3 felony possession of a narcotic drug, the State was required to prove beyond a reasonable doubt that (1) he knowingly or intentionally possessed a schedule I or II narcotic drug in a pure or adulterated form; (2) the amount of the drug was at least ten grams but less than twenty-

eight grams; and (3) he committed the offense while in possession of a firearm. Appellant's App. Vol. 2 at 142; Ind. Code §§ 35-48-1-16.5(2); 35-48-4-6(a), -(d)(2). To convict him of level 5 felony possession of cocaine, the State was required to prove that (1) he knowingly or intentionally possessed cocaine in a pure or adulterated form; (2) the amount of the drug was less than five grams; and (3) he committed the offense while in possession of a firearm. Ind. Code §§ 35-48-1-16.5(2); 35-48-4-6(a), -(b)(2).

[11] Specifically, Laughlin argues that the evidence is insufficient to prove that he possessed the illegal drugs and the firearm, asserting that no one saw him discard the bag or the firearm; the bag was not examined for DNA or fingerprints; and the firearm had no fingerprints and was not examined for DNA. We observe that a conviction for a possessory offense does not depend on catching a defendant red-handed. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). Indiana courts have long recognized that the element of possession may be established by proof of actual or constructive possession. *Griffin v. State*, 945 N.E.2d 781, 783 (Ind. Ct. App. 2011). "Actual possession occurs when a defendant has direct physical control over an item, whereas constructive possession occurs when a person has the intent and capability to maintain dominion and control over the item." *Id.* Circumstantial evidence can be sufficient to establish constructive possession or to support an inference of actual possession. *State v. Hill*, 688 N.E.2d 1280, 1283 (Ind. Ct. App. 1997), *trans. denied* (1998).

[12] Turning first to the illegal drugs, the evidence shows that Laughlin was in an interview room at police headquarters; civilians are not allowed to wander in the hallway or around interview rooms at police headquarters. The interview room was off a hallway that led from the main office to a dead end and is well lit. Detective Scroggins had walked down the hall between the main office and Laughlin's interview room three or four times that day before Laughlin's request to use the restroom and had not seen any other people in the hallway or anything on the floor. After Laughlin asked to use the restroom, Detective Scroggins walked down the hallway again and returned with Officer Solomon, and neither officer saw any other person or anything on the floor. As the officers escorted Laughlin down the hall to the restroom, both officers heard a soft sound like something hitting the floor. Immediately after hearing the sound, Detective Scroggins saw something from the corner of his eye, looked down, and saw the bag containing the illegal drugs within inches of Laughlin's left foot. This is sufficient evidence from which a reasonable factfinder could find that Laughlin had actual possession of the bag and dropped it in the hallway. Laughlin's argument is merely an invitation to reweigh the evidence, which we must decline.

As to the firearm, the evidence shows that Officer Solomon found a black .40 caliber handgun lying on the curb next to the passenger-side window of Laughlin's red truck, and the window was rolled down even though it was January. Parker saw Laughlin with a black handgun twice, when Laughlin exited the adjacent building and when he got out of his truck. Parker positively

identified Laughlin in a photo array as the man he had seen carrying the handgun. The police found three .40 caliber shell casings in the apartment, where Little had been and the bullet in the handgun Officer Solomon found outside Laughlin's truck was also .40 caliber. In addition, Laughlin's erratic driving after Officer Solomon began following him is consistent with evasive actions one would take to avoid being followed by a police officer. *See Hayes v. State*, 876 N.E.2d 373, 376 (Ind. Ct. App. 2007) ("Flight may be considered by the fact-finder in determining a defendant's guilt"), *trans. denied* (2008). From this evidence, a reasonable factfinder could find that the handgun found outside Laughlin's truck was the same handgun that Parker saw Laughlin carrying earlier that day. In addition, Laughlin would not have had any opportunity to obtain the illegal drugs after Officer Solomon pulled him over, and therefore the only reasonable inference is that he had them in his possession before he was pulled over. Thus, the evidence supports a reasonable inference that Laughlin possessed the handgun while in possession of the illegal drugs. Accordingly, we conclude that the evidence is sufficient and affirm Laughlin's convictions.

[13] Affirmed.

Najam, J., and Pyle, J., concur.